State vs. Palmer.

No. 7858.

STATE OF LOUISIANA VS. EDWARD C. PALMER.

| | |
|---|---|
| 32 | 565 |
| 46 | 850 |
| 32 | 565 |
| 47 | 436 |
| 32 | 565 |
| 50 | 703 |
| 50 | 713 |
| 32 | 565 |
| 109 | 126 |
| 32 | 565 |
| 122 | 293 |
| f122 | 295 |
| 32 | 565 |
| 125 | 1085 |

In all prosecutions for the violation of the laws of the State, the utmost certainty and distinctness of pleading, the strict construction of the provisions of penal statutes, according to the usual and reasonable meaning of words and terms, and the admission or rejection of testimony according to the rules of pleading and law of evidence, are required.

Charging the accused, in the first Count of the Indictment, with embezzling *and* converting to his own use money *belonging* to the Bank; and in the second Count, with embezzling *and* converting to his own use money *deposited* with the Bank, thus charging conjunctively both embezzlement and conversion, and the embezzlement and conversion of both money belonging to the Bank, and money deposited with it, does not render the Indictment obnoxious to the objection of either duplicity or uncertainty, under the provisions of Sec. 907 of the Revised Statutes.

In prosecutions under that Section, it is not necessary that the Indictment should charge that the President or other officer of the Bank had the actual custody or possession of the money embezzled or converted. In that Section, which applies only to Bank officers, the ingredient of "custody," "possession," or "being entrusted with," is not mentioned as a requisite to constitute the offenses therein denounced, as it is in other statutes providing for the definition and punishment of embezzlement.

The description of the money, as contained in the Indictment, being "a general allegation of the amount and the thing," is sufficient in a proceeding under the same Sec. 907, as provided in Section 906 of the Revised Statutes.

But in this case, the Indictment should have been confined to the provisions of said Sec. 907, instead of which it has been extended to those of Section 905, which applies to other and distinct cases of embezzlement and breach of trust. Thus, in this Indictment, there are grouped *in each Count* the offenses described in these two different Sections, which define different and distinct classes of offenses. For that reason the Indictment in both its Counts is bad for duplicity, and defective for uncertainty.

Several offenses, distinct in kind and degree, cannot be included in the same Count, unless they are cumulative offenses denounced in the *same clause or section* of a criminal statute.

When the objections urged in the Motion in arrest of judgment are defects of substance, and not of form, they are not waived by pleading to the Indictment, nor cured by the verdict.

Testimony which is wanting in direct connection with the offense charged, though offered to prove the intent of the accused, is irrelevant, and calculated to operate to his prejudice on the mind of the jury, and therefore inadmissible.

APPEAL from the Superior Criminal Court, parish of Orleans. *Whitaker*, J.

J. C. Egan, Attorney-General, for the State :

The accused is indicted under Sec. 907 of the Rev. Stat. of 1870, which does not require that the bank officer charged with embezzlement should have been *in possession* of the money.

A defendant may move an arrest of judgment for all defects which are not cured by verdict; but not for a mere formal defect. The reasons alleged in this Defendant's Motion are all matters of form. 1 Archbold, 671 ; 4 Burr, 2287 ; 1 Lord Roym, 231 ; 1 Salk. 77, 315 ; 1 Sed. 65 ; 7 Black, p. 282 ; 8 Sm. and Marsh. 573 ; 2 Roll. Ab. 716 ; 3

37

Black. Com. 394; Caruth. 389 ; Bishop, Crim. Proc. vol. 1, sec. 443.
There is no duplicity or uncertainty in the Indictment ; the accused is
charged with but one act, and that act is clearly defined under the
statute.    Bishop, Crim. Proc. vol. 1, sec. 436 ; 4 Allen, 305-6 ; 15 Pick.
273 ; 15 An. 498 ; Rev. Stat. sec. 906.

The law of the State makes the description of the money embezzled and
converted sufficient.  If it were not, it is a mere defect of form,
which is cured by verdict.   30 An. 601 ; Rev. Stat. sec. 1064.

Henry C. Miller, Branch K. Miller, and Singleton & Browne for de-
fendant :

An overdraft of its bank account by a partnership does not constitute
an embezzlement or conversion to his own use by a member of the
partnership.

The transfer of a credit by check, no money being paid on said check, is
not an embezzlement or conversion to one's own use.

The drawing of the check did what the law would have effected *proprio
vigore*.

Civil Code, art. 2207 *et seq.;* 7 Robinson, 466 ; Case vs. Beauregard, 1
Otto, 134.

The voluntary liquidation of a corporation does exempt it from com-
pensation.

Civil Code, art. 2207 *et seq.;* 6 Rob. 387.

Hennen's Digest, p. 258, No. 1 *et seq.;* Louque's Digest, 119, No. 1.

On a trial for a specific offense evidence of other and distinct offenses
is inadmissible.   Such testimony, if admitted to show intent, must
tend to prove intent with reference to the offense charged.

To constitute embezzlement, the property charged to have been em-
bezzled must have been entrusted to the accused by virtue of his
office, duty, or employment.   The president of a bank is not so en-
trusted with its money or deposits.

2 Archbold's Crim. Law. p. 560.

1 Wharton's Precedents, pp. 467, 468, *et seq.*

Roscoe's Crim. Evidence, p. 438 *et seq.*

2 Wharton's Crim. Law, p. 1907-8 ; Edition 1868, note.

The charges asked for were necessary to protect the defendant from an
erroneous verdict ; they were so qualified by the court as necessarily
to prejudice Defendant.

The Indictment is bad for duplicity.

Revised Statutes, SS. 905, 907.

1st Archbold's Crim. Law, p. 313.

State vs. Fant, 2 A. 837.

State vs. Adams, 31 A. 717.

State vs. Palmer.

The Indictment is bad for want of a proper description of the money.
Revised Statutes, S. 906.
10 A. 229 ; 31 A. 442 ; 20 A. 48 ; 26 A. 337.
The Indictment does not sufficiently describe any offense known to the
    law. 20 A. 147 ; 9 A. 210 ; 3 A. 326 ; Revised Statutes, S. 976.
Defects of substance are not cured by verdict. Revised Statutes, 1063,
    1064 ; 11 A. 648 ; 14 A. 688 ; 5 A. 327 ; 10 A. 229 ; 20 A. 147 ; 20
    A. 408.

Henry C. Castellanos on same side :

The Indictment is bad for duplicity.
Revised Statutes, S. 907, Acts 1821.
Bishop Crim. Proc. S. 432 ; 31 Maine, 386.
5 Howard, (Miss.) 250 ; 36 N. H. 539 ; 1 Parker, 481.
2 Mass. 163 ; 2 A. 837 ; 4 A. 31 ; 14 A. 678; 15 A. 498 ; 31 A. 487, 717.
The Indictment is bad for uncertainty. The offense must be charged in
    apt and technical terms on the face of the record.
Starkie Crim. Pleading, pp. 73, 235, 242, 247 ; 29 A. 602 ; 20 A. 403, 164 ;
    5 A. 326 ; 9 A. 210 ; 10 A. 195 ; 10 A. 191 ; 29 A. 602 ; 8 Rob. 590.
The Indictment is bad for want of a proper description.
Revised Statutes, SS. 1061, 906 ; 20 A. 49 ; 26 A. 377 ; 22 A. 425 ; 21
    A. 442.
These objections do not come too late.
Archbold, 49, 78, 38 ; Revised Statutes, S. 1063 ; 22 A. 77 ; Archbold, 46 ;
    20 A. 49 ; 11 A. 648 ; 10 A. 265, 230 ; 28 A. 5 ; 26 A. 71 ; 14 A. 827 ; 14
    A. 785 ; 18 A. 720.

The opinion of the Court was delivered by

LEVY, J. The defendant, Edward C. Palmer, was indicted, tried,
convicted, and sentenced to three years imprisonment at hard labor, on
the charge as set forth in the two counts of the indictment : 1st. That
" being the President of a bank chartered by the State of Louisiana, to
wit : the Louisiana Savings Bank and Safe Deposit Company, and acting
as such, feloniously, knowingly, and willfully, did wrongfully use, dispose
of, conceal, and otherwise embezzle and convert to his own use certain
money, to wit, the sum of forty-seven thousand four hundred and
thirty-seven dollars and thirty-four cents, belonging to the said Louisiana
Savings Bank and Safe Deposit Company." 2d. That being President
of the said Bank, etc., and acting as such, he did feloniously, knowingly,
and willfully, wrongfully use, dispose of, conceal, and otherwise embezzle
and convert to his own use" the aforesaid sum of money, " deposited in
the said Louisiana Savings Bank and Safe Deposit Company." A motion
for new trial having been denied, and motion in arrest of judgment

overruled, the accused was sentenced as above stated, and has appealed from the judgment and sentence of the Court.

The defendant during the progress of the trial filed five Bills of Exceptions to various rulings of the Court, and made an assignment of errors, and additional and supplemental assignment.

The first Bill of Exceptions is to the charge of the Court on the request of the defendant to instruct: "That if the Jury find from the evidence that the money from the Louisiana Savings Bank and Safe Deposit Company, whether belonging to the Bank or composed of its deposits, was under the mode of doing business observed in said Bank,. entrusted to the cashier or teller, or some officer of said Bank, other than the President, and that in point of fact, the defendant never had the custody or possession of said money, he cannot be convicted of having embezzled or converted said money to his own use, it being essential to constitute said embezzlement or conversion, that the money, the subject of the charge, was in his actual possession or custody, and entrusted to him as President, and so being in his custody or possession as President, was embezzled or converted by him."

The Court refused so to charge, on the ground that in its opinion,. "the actual personal custody of the funds was not essential as a basis. for the crime charged." On the request to instruct that: "The cashier of the bank is presumed to have the actual custody and possession of the money of the bank, whether the money belongs to the bank or represents its deposits, and the President is presumed not to have that possession and control, and the Jury must accept and act on that presumption, unless it is removed by proof," the Court charged: "The question of actual custody does not seem to affect the issue. In the opinion of the court, it is immaterial whether the funds of the bank were in the possession of the President or the cashier." The defendant requested the court to charge further in his behalf: "That if the Jury finds from the testimony adduced, that the money which the defendant is charged with having embezzled or converted to his own use, was obtained by overdrafts on his check, or the check of his firm, E. C. Palmer & Co., then the jury are instructed to find that the obtaining of money by said overdrafts was neither an embezzlement by defendant, or a conversion to his own use of the money belonging to or composing the deposits of said bank."

The court refused to give such charge for the reason: "The question of fact before the jury is not merely whether the accused obtained any money by an overdraft. The question is, whether he embezzled or converted to his own use any money belonging to the bank, or deposited therein."

The Court instructed the jury "that if Mr. Palmer drew on his in-

·dividual account, on the twenty-eighth of June, 1879, or any other day, having to that account a proper credit in his favor, and transferred the amount of his check to the credit of his firm, it was a legitimate trans-·action, '*provided*' *that the bank was then in regular course of business.*"

The second Bill of Exceptions is directed to the ruling of the Court, refusing to instruct the jury that the actual custody or possession of the money in the President, and entrusted to him as President, was essential ·to constitute the embezzlement or conversion charged, and that the ·cashier is presumed to have the actual custody and possession, and the President is presumed not to have that possession and control, and this presumption must be removed by proof.

The third Bill of Exceptions is to the ruling of the Court, on the re-·quest to charge the Jury that " the State having proved the charter of ·said Bank under the laws of this State ; that on the 28th of June, 1879, ·and for years previous, the defendant, E. C. Palmer, has and had been · President of said Bank ; that on the 28th June, 1879, the deposit-account ·of defendant's commercial firm of E. C. Palmer & Co. with said Bank was overdrawn in the sum of forty-seven thousand four hundreJ and ·thirty-seven 34-100 dollars, the amount charged to have been embezzled in the indictment, said overdraft on the checks of said firm having been ·made while defendant was President of said Bank ; and the defendant having proved that those overdrafts had run through a series of years, and that the money he is charged to have embezzled and converted to his own use was obtained by and through the checks of his said firm, and credited to his said firm, in their said account, resulting in said overdraft, as appears by said account, and that interest was charged by said Bank in said account of E. C. Palmer & Co., " and, that if the jury finds from the testimony adduced that the money which the defendant is charged with having embezzled or converted to his own use was ob-·tained by overdrafts on his check or the checks of his firm, the obtain-·ing of money by said overdrafts was neither an embezzlement by defend-·ant, or a conversion to his own use of the money belonging to or ·composing the deposits of said Bank."

The fourth Bill of exceptions was taken to the ruling of the Court, permitting the testimony of J. S. Walton, the cashier of the bank, to be ·given, as to his (witness) having, under the direction of the defendant, made certain entries to profit and loss account on the books of the ·bank of the following items : W. A. Van Norden's accommodation note ·of E. C. Palmer & Co., $20,000 ; W. A. Weed, $1036 52 ; W. A. Van Norden's accommodation note of $7528 50 ; and that said entries were false and improperly made, and that said E. C. Palmer & Co. got the benefit of said obligations, and that witness, when asked to make said ·entries, stated to Palmer they would not look well, but that Palmer in-

sisted upon their being made, and they were made on the 30th June, 1879, but credited as of the 28th June, 1879, and that said bank was then in the hands of liquidators. Defendant objected to the reception of this testimony, on the ground that the alleged false entries had no connection with or relation to the offense charged ; but this objection was overruled by the Court, and the testimony admitted to show the intent of the accused with reference to the offense of embezzlement charged ; and the State proving afterward that the account of E. C. Palmer & Co. with the Bank was overdrawn on the 28th June, 1879, and that on June 30th, or July 1st, 1879, he drew his check for the amount of $52,938 13, an amount greater than said overdraft, said check being drawn upon and debited to account of E. C. Palmer individually, on which he had a credit of $55,000, the amount of said overdraft being admitted, and the testimony tending to show intent.

The fifth Bill of Exceptions was to the ruling of the Court, admitting the testimony of J. C. Egan, by whom the State offered to prove that the accused, E. C. Palmer, the President of the bank, had stated to witness that the Louisiana Savings Bank and Safe Deposit Company was good and solvent ; that there was no possibility of its failure ; that if the witness, as Attorney-General, would give time, a judgment of the State for taxes against the bank would be paid ; that these statements were made to procure time for the bank, and that a short time after, the bank failed ; this testimony being offered to show concealment and intent, and for no other purpose. The defendant objected to said testimony, on the ground that the testimony was wholly irrelevant to the charge on which the prisoner was on trial ; was calculated to excite the prejudice of the jury against him, and to mislead and divert their attention from the issue made by the indictment.

The defendant after conviction and before sentence filed a motion in arrest of judgment, on the grounds : That the indictment is bad for duplicity, insisting that the theory maintained in the charge of the Court is, that the section of the Revised Statutes (sec. 907), under which the defendant is indicted creates two distinct offenses, embezzlement and conversion, the court maintaining in its charge that because of this distinctness of the offenses it was not necessary, in order to convict, that the jury should find the prisoner was entrusted with the funds he is charged to have embezzled ; and that if this theory announced by the Court be correct, and was adopted by the jury, though controverted by the defense, the indictment is bad for duplicity, and two distinct offenses are joined in each count ; that on this theory maintained by the Court, the indictment is bad for duplicity, as it joins and combines the offenses " did wrongfully use, dispose of, conceal, and otherwise embezzle and convert to his own use certain money ;" and he contends that the offenses,

of wrongfully using, disposing of, and concealing being each distinct and different, as well as distinct and different from the embezzlement and conversion charged, and that this distinction is recognized in Sections 905 and 907 of the Revised Statutes ; that the indictment contains no sufficient description of the money which the defendant is charged to have embezzled, converted, used, disposed of, and concealed, which the law requires to identify the offense, to protect defendant from a second prosecution, and to make the charge certain ; that these defects and insufficiencies are material and substantial, and not cured. by plea, trial, or verdict. In his supplemental motion in arrest of judgment, the defendant urges : That if on the other hand the indictment contains but one offense, then the same is fatally defective, because no offense known to the law is therein described. The motions in arrest of judgment were overruled by the Court, on the ground as to the point raised, that two distinct and different offenses, embezzlement and wrongful conversion, are joined in each count of the indictment, it was "too late to raise the question, and it does not affect the worth of the verdict." As to the point that there was no sufficient description of the money, the Court held it to be sufficient, and also held as to the point raised in the supplemental motion in arrest, that the offense is clearly defined under the law.

The defendant assigns as error the charges given by the lower Court, the refusals to instruct the Jury as requested by the defendant, the admission of the testimony of J. S. Walton, and of J. C. Egan, and the rulings which were excepted to, and to which Bills of Exceptions were filed by defendant.

This Court is not called upon, nor is it within its province, to decide upon the guilt or innocence of the accused. It can deal only with the application or operation of the law to a given state of facts embodied and admitted in the bills of Exceptions certified by the lower court. In all prosecutions for the violation of the laws of the State, the utmost certainty and distinctness of pleading, the strict construction of the provisions of penal statutes, according to the usual and reasonable meaning of words and terms, and the admission or rejection of testimony according to the rules of pleading and law of evidence are required.

In his charge to the Jury, the Judge of the Court *a qua* declared that " the indictment is framed under Section 907 of the Revised Statutes of the State, which provides that any President, cashier, teller, or other officer or person employed in the service of any bank chartered by this State," * * * " who shall knowingly and willfully embezzle and convert to his own use, or shall knowingly aid and abet any person in embezzling or converting to his own use any money belonging to such bank or de-

posited therein, shall, on conviction, be imprisoned at hard labor not more than seven, nor less than one year."

It is true, that in both counts of the indictment, the defendant is charged with "embezzling *and* converting to his own use;" in the first count, these charges are as to money *belonging* to the bank, and in the second count, as to money "deposited" therein. Sec. 907, Rev. Stat., denounces the offenses of embezzling or converting to his own use, by certain bank officers and employees, money either belonging to or deposited in the bank. We think that under this section embracing only the bank officers and employees designated therein the allegations of *embezzling* money belonging to the bank or deposited in it, would embrace, as an ingredient essential to constitute the offenses, the *conversion* of such money ; that while embezzlement in its very essence includes conversion, without which conversion embezzlement has no existence, conversion does not include embezzlement. Under this Section, any of the officers named might be prosecuted for knowingly and willfully converting to his own use, as an offense distinct from embezzlement, and while, as we have stated, conversion is necessary to embezzlement, and is an ingredient of the offense, charging both embezzlement and conversion conjunctively does not render the indictment obnoxious to the objection of either duplicity or uncertainty. 1 Bishop on Crim. Proced. Sec. 436 ; 4 Allen, 305 ; 15 Pickering, 273.

We are of the opinion that in prosecutions under Sec. 907, Rev. Stat., it is not necessary that the indictment should charge that the President or other officer is being in the actual custody or possession of the money charged to have been embezzled or converted. In that section which applies only to Bank officers, the ingredient of "custody,"."possession," or "being entrusted with," is not mentioned as a requisite to constitute the offenses therein denounced ; while in other Statutes in which embezzlement by persons or officers other than those specially designated in Section 907, those conditions are expressly made elements of the offense. We are also of opinion that the description of the money as contained in the indictment, being a "general allegation of the amount and the thing," is sufficient in a proceeding under sec. 907, as provided in Section 906, Rev. Stat.

The indictment in this case, however, does not confine itself to Sec. 907, Rev. Stat., and it is difficult to perceive how and wherein it is framed under that Section. That denounces the embezzlement or conversion of money belonging to or deposited in a Bank, by certain officers of such Bank ; it is limited to those two offenses. We think it may be safely assumed that in contemplation of that Statute, each of the several officers designated therein was entrusted with the custody, keeping, care, or possession of the funds of the bank, and *under that section*

·could only be prosecuted criminally for the commission of the offenses of embezzlement or conversion to his own use.

Section 905, Rev. Stat. 1870, under title "Crimes and offenses," heading "Embezzlement or breach of trust," creates other and distinct offenses than those contained in Sec. 907 ; it reads as follows : "Any servant, clerk, broker, agent, consignee, trustee, attorney, mandatary, depositary, common carrier, bailee, curator, testamentary executor, administrator, tutor, or any person holding any office or trust under the executive or judicial authority of this State, or in the service of any public or private corporation or company, who shall ' wrongfully use, dispose óf, conceal, or otherwise embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading, or any other property which he shall have received for another, or for his employer, principal or bailor, or by virtue of his office, trust, or employment, or which shall have been entrusted to his care, keeping, or possession by another, or by his employer, principal or bailor, or by any court, corporation, or company, upon conviction thereof  *  *  *  *  shall suffer imprisonment at hard labor, not exceeding seven nor less than one year." Thus it will be seen that in this indictment there are grouped in each count the offenses described in these two different sections, which define different and distinct classes of offenses. While embezzlement necessarily includes conversion to his own use, neither embezzlement nor conversion to his own use necessarily includes every species of wrongfully using, disposing of, or concealing. Sec. 907 denounces the offenses of "knowingly and willfully" embezzling *or* converting to his own use money belonging to or deposited in a Bank. Sec. 905, the offenses of wrongfully using, disposing of, concealing, or otherwise embezzling any money, etc., which he may have received for another, or by virtue of his office, trust, or employment, or which shall have been entrusted to his care, keeping, or possession by another, or by his employer, principal or bailor, or by any Court, corporation, or company. Bishop on Crim. Procedure, Sec. 323 *et seq.;* State vs. Adam *et al.* 31 An. 717, the Court held : " Several offenses, distinct in kind and degree, cannot be included in [the same count ; but this rule does not apply to cumulative offenses denounced in the *same clause or section* of a criminal statute. Such clause or section may, and often does, enumerate several offenses linked to the same acts, or enumerate disjunctively the intent necessary to constitute each of the offenses, and in such cases they may be charged cumulatively in one count." State vs. Markham, 15 An. 498 ; 40 Maine, 592 ; 36 N. H. 359.

We think the indictment, in both its counts, is bad for duplicity, and defective for uncertainty.

As to the objections above discussed, urged in the motion in arrest

of judgments, it is held by the Judge *a quo* that they come too late, and are cured by verdicts. This point is determined by the character of the defects which are alleged to exist, i. e. whether they are formal or of substance. We are of opinion that they are defects of substance, and not of that class and description, covered by sec. 1063, Rev. Stat., and by sec. 1064, Rev. Stat., objections to which should be taken by demurrer or motion to quash before the Jury is sworn.

In State vs. Deleono, 11 An. 648, the Court held that where the indictment is " for selling liquor to a slave without the consent in writing of his master," when the Statute denounces the offense of " selling without the consent in writing of the owner, overseer, or employer," this defect was one of substance, and not of form, and was not waived by pleading to the indictment nor aided by verdict ; and not regarding it as a formal defect, considered that the motion in arrest of judgment on that ground should have prevailed. The decisions in 5 An. 327, 10 An. 229, 20 An. 147, 408, sustain this view.

The defendant filed Exceptions as to the admissibility of the testimony of Walton, he being cashier of the Bank, admitted to prove that he made certain entries to profit and loss account on the books of the bank ; that said entries were made under the direction of the defendant, and that they were false and improperly made ; and that E. C. Palmer & Co. got the benefit of said obligations, they having been discounted for said firm, and the proceeds passed to their credit in the year 1874, the dates of these obligations, and that witness stated to defendant when asked to make these entries they would not look well, but defendant insisted they should be made, and they were made on the 30th June, 1879, but credited as of the 28th June, 1879, and the bank was then in hands of liquidators. Defendant objected to the admission of this testimony on the ground that the alleged false entries had no connection with, or relation to, the offense charged, but the Court overruled the objection and permitted the testimony to be given, to show the intent of the accused with reference to the offense of embezzlement charged in the indictment under which he was being tried. Of the like nature is the objection as recited in the Bill of Exceptions to the adoption by the Court of the testimony of J. C. Egan, Esq., who was offered by the prosecution to prove that the accused had stated to the witness that the bank of which he was President was good and solvent ; that there was no possibility of the failure of said bank ; that if the witness, an Attorney-General, would give time, a judgment of the State for taxes against the bank would be paid ; that these statements were made to procure time for the bank, and that a short time thereafter the bank failed ; this testimony being offered to show concealment and intent, and for no other purpose. The defendant objected on the ground that

the testimony was wholly irrelevant to the charge on which the prisoner·
was on trial, was calculated to excite the prejudice of the jury against
him, and to mislead and direct their attention from the issue made by
the indictment; the Court overruled the objection and allowed the testi-
mony to go to the Jury. We think the objections of the defendant to·
this testimony of both witnesses, Walton and Egan, were well taken and
should have been sustained. The facts offered to be proved by them,
respectively, as to the alleged false entries by Walton, and the declara-
tions of the accused to Egan as to the solvency of the bank, at the time
the conversation between them took place, have no such direct rela-
tion to the offense charged as to connect them therewith, and are not
such part of the *res gestæ* as render them admissible to prove the in-
tent of the accused, existing at the time the offense is laid in the indict-
ment. Being, then, irrelevant and wanting in such direct connection,
they were calculated to operate to the prejudice of the accused in the·
minds of the Jury, and affect its members injuriously toward him by
this interpretation in the issue which they were to decide.

The other objections are to the refusal of the Court *a qua* to charge·
as requested by the defendant, and to the charge as given in regard to·
the law as applicable to the proof made by the State and the defendant
in relation to the existence of an overdraft by the firm of E. C. Palmer·
& Co., of which firm the defendant was a member, of the sum of
$47,437 34 appearing on the books of the Bank to the debit of the ac-
count of said firm, and the drawing by the defendant of his check on
his individual account in said bank for $52,938 13, defendant directing said
check to be credited to said firm's account, which was done, thereby
balancing said firm's account, and that when said check was drawn by
defendant and credited to said firm's account, said bank had resolved
on liquidation and elected liquidators, the bank having ceased to receive·
deposits on the 28th of June, 1879, up to which time it did business, and
said check was dated on the 28th of June, 1879, though drawn on the 30th
June, 1879 ; that at the time said overdraft existed, and when the money·
was obtained on the overdraft defendant had a credit on his individual
deposit-account with the bank of $55,299 26, on which individual credit·
said check was drawn, and that it was debited to his said individual
account; that it had been agreed upon by the Bank that it should allow
interest on the said credit at eight per cent from July 1st, 1874, and that
like interest had been charged on the overdrawn account of the firm ;.
that the money charged in the indictment to have been embezzled had
been obtained by and through said overdrafts in said deposit-account of·
said firm ; that they had run through a series of years ; that no money
was paid to or obtained by defendant on his said check, but defendant.
directed it to be credited to the firm's account to balance the said over-

drafts, as stated in the bill of Exceptions and set forth in a preceding portion of this opinion. The Judge *a quo* in his charge ruled that "if Palmer and Palmer & Co. had separate accounts with the bank, and it was understood with the bank that as to drafts by Palmer or by Palmer & Co. said accounts should be treated as essentially one account, there can be no doubt that an overdraft on one account might be offset by the other. If Palmer's individual account was really in his favor, he had a right to draw to the credit of the firm." Also, that "if a check was drawn by the accused upon an account lawfully to his credit and was fairly placed to the credit of any other account at his discretion, there can be no doubt that there could be no embezzlement in such checking and crediting. The position of the account and checks are matters of fact before the Jury, and they will consider the circumstances as disclosed by the testimony in coming to a conclusion as to their verdict." The Court further instructed that if defendant "drew on his individual account on the 28th of June, 1879, or any other day, having to that account a proper credit in his favor, and transferred the amount of his check to the credit of his firm, it was a legitimate transaction, *provided that the bank was then in the regular course of business*, and unless there were some interposing contract with the bank, or regulation of the bank equivalent to a contract compensation, a set-off would be legal under such circumstances." The defendant excepted specially to that portion of the charge which contains the proviso, or qualification in italics.

We are of the opinion that the Court erred in making this proviso a qualification ; that if this right of compensation or set-off existed, based upon the proof as recited in the bill, it was not affected by the proviso or qualification announced in the charge, and if not thus affected, the charge as given was calculated to prejudice the defendant with the Jury and affect his case to his injury. The qualification or proviso is inconsistent with the enunciation of the law as made by the Judge *a quo* in previous portions of his charge, and was, in our opinion, in itself improper, and, therefore, prejudicial to the defendant.

We think it proper to model our decree herein according to that rendered by our predecessors in the case of State vs. Curtis, 30 An. 814 ; also, State vs. Morrison, 30 An. 817 ; State vs. Williams, 30 An. 1028.

It is therefore ordered, adjudged, and decreed that the verdict and sentence appealed from be set aside, and the indictment quashed as not good in law, and that the defendant remain in custody, subject to the orders of the Superior Criminal Court for the parish of Orleans, for further prosecution according to law.

Rehearing refused.