PEOPLE v. MESSER.

1. EMBEZZLEMENT—ELEMENTS—STATUTORY PROVISIONS—INFORMA-
TION—SUFFICIENCY.
Section 11562, 3 Comp. Laws, creates two species of larceny,
one which may be committed by the acts described by the
word "embezzle," and another which may be committed by
the acts described by "fraudulently convert to his own use;"
and an information which charges that respondent, a bank
cashier, "did feloniously embezzle" and "fraudulently con-
vert" certain moneys of the bank to his own use, and did
"feloniously steal, take, and carry away," etc., charges
"embezzlement larceny" and is not made uncertain or
double by the words "fraudulently convert."

2. SAME—BANK CASHIER—POSSESSION OF FUNDS—SUFFICIENCY OF
ALLEGATIONS.
An information alleging that respondent was cashier of a bank
and did embezzle its funds, sufficiently charges that he was
in possession of the funds, since the office of cashier of a
bank involves possession of its funds.

3. STATUTES—CONSTRUCTION—ADOPTION FROM SISTER STATE.
The presumption that a statute adopted from a sister State
brings its construction with it, does not apply to a construc-
tion given the statute in that State after its adoption here.

4. EMBEZZLEMENT—TRIAL—EVIDENCE—OTHER OFFENSES.
On a prosecution for embezzlement under section 11562, 3
Comp. Laws, it is proper to admit evidence of other acts of
embezzlement committed within six months after the time
stated in the information, since section 11782, 3 Comp. Laws,
permitting such practice, is remedial, and intended to apply
to every act of embezzlement reasonably within its terms.

5. SAME—SEVERAL OFFENSES—ELECTION.
On a prosecution for embezzlement under section 11562, 3
Comp. Laws, respondent is not entitled to confine the people,
in asking for a conviction, to the first act to which they
direct their proofs.

6. SAME—ARGUMENT OF COUNSEL—PREJUDICE.
Where a bank cashier is convicted of embezzling an amount of
which no entry was ever made on the books, he is not prej-

udiced by an argument of the prosecuting attorney as to what an absent witness would prove in corroboration of what another witness had shown from the books.

7. CRIMINAL LAW—TRIAL—REQUESTS TO CHARGE—ACCUSED DECLINING TO TESTIFY.

Refusal of the court to give a requested charge that no presumption shall be indulged against respondent from failure to testify is not excused by a ruling, during argument, that there was nothing for the jury to consider in relation to that fact.

8. EMBEZZLEMENT—CHECK—EXTRANEOUS EVIDENCE—ADMISSIBILITY.

On the prosecution of a bank cashier for embezzlement of money obtained from another bank by means of a memorandum check, evidence outside the check is admissible for the purpose of showing that it was a mere memorandum and the circumstances attending its execution.

9. SAME—LOCUS OF OFFENSE.

Where the cashier of a bank obtained money from another bank under circumstances rendering his bank liable for it, and converted it to his own use before returning to his bank, such conversion constituted "larceny in such [his] bank," under section 11562, 3 Comp. Laws.

Exceptions before judgment from Sanilac; Beach, J. Submitted January 24, 1907. (Docket No. 148.) Decided April 30, 1907.

Clarence L. Messer was convicted of embezzlement. Reversed.

*Timothy C. Quinn* and *Walter S. Wixson* (*Avery & Walsh*, of counsel), for appellant.

*Fred A. Farr*, Prosecuting Attorney, and *Harry A. Burgess*, Assistant Prosecuting Attorney, for the people.

BLAIR, J. The respondent was arraigned upon an information containing three counts, based upon section 11562 of the Compiled Laws. Respondent moved to quash the information, and the first and third counts were quashed. The second count, upon which respondent was tried, is as follows:

"And the said prosecuting attorney, who prosecutes as aforesaid, further gives the said court to understand and be informed that heretofore, to wit, the 2d day of January, A. D. 1904, at the village of Marlette, and in the county aforesaid, one Clarence L. Messer, late of the village of Marlette aforesaid, being then and there an officer of a certain incorporated bank, to wit, cashier of the Marlette State Bank, a corporation before then duly organized and incorporated, and then existing under the laws of the State of Michigan aforesaid, and doing then and there, by virtue thereof, a general banking business, certain moneys to a large amount, to wit, to the amount of $2,635.50, of the value of $2,635.50, the money, property, and effects of, belonging to, and in the possession of the said Marlette State Bank, did, then and there, in the Marlette State Bank aforesaid, with intent then and there to injure and defraud the said Marlette State Bank, the owner of said money, property, and effects, feloniously embezzle and fraudulently convert to his own use; that so, the said Clarence L. Messer, said cashier of the Marlette State Bank aforesaid, at the time last aforesaid, at the village of Marlette aforesaid, thereby in the manner and form aforesaid, the said money, property, and effects of, belonging to, and in the possession of the aforesaid Marlette State Bank, to wit, $2,635.50, of the value of $2,635.50, in the said Marlette State Bank, feloniously did steal, take, and carry away; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

A plea of not guilty was entered by direction of the court, and, respondent demanding a bill of specifications and particulars of the matters upon which the people intended to rely upon the trial of said cause, a bill of particulars was filed, containing many items, among which were the following:

"April 5, 1904. Currency obtained by respondent from the Commercial State Bank of Marlette, on behalf of the Marlette State Bank, in the sum of $1,000. It is claimed that this sum, the money and property of the Marlette State Bank aforesaid, was on, to wit, the said 5th day of April, 1904, appropriated by said respondent and converted to his own use.

"January 2, 1904, $2,635.50 charged against savings

account of J. D. Harris, No. 39, on the savings deposit ledger of the Marlette State Bank, but no corresponding entry appears in his savings pass book of that number."

The Harris item was the first upon which testimony was given, and was followed by testimony as to many other items, including the item of April 5th. The testimony as to the item of April 5th was given by Mr. Merrill, the second vice president and assistant cashier of the Commercial State Bank of Marlette, and was, in substance, as follows: That it was the custom of respondent, as cashier of the Marlette State Bank, to come to witness' bank to borrow currency for his bank.

"Mr. Messer came into the bank shortly after 9 o'clock on the morning of April 5th, and asked if we had any currency to spare. I told him I didn't know, but I would look. I looked in our safe, and came out and asked him how much he wanted. He said that a thousand would do, that they expected some in on the 10:20 train from Port Huron, and could replace it. I told him I could let him have that much, and I gave him a thousand, for which he gave me this check. On that date, April 5th, 1904, he did not have a private account in our bank. He left our bank with the thousand dollars in currency. I next saw Mr. Messer not until after he had returned from the western trip. * * * Mr. Messer had no private account in our bank at the date of April 5, 1904. He never had a private account in that bank. * * *

"*Q.* Now, on the 5th day of April, 1904, when this paper was handed to you and you gave him the currency, what was done with the paper? * * *

"*A.* I laid it back in the safe from where I had taken the currency. * * *

"*Q.* What do those two letters there mean?

"*A.* 'Cy?'

"*Q.* Yes.

"*A.* Currency, I should judge.

"*Q.* That paper is drawn in the usual way for a private check? * * *

"*A.* Checks paid over the counter and charged to commercial accounts are always signed with the full name. I never paid a check in that way. * * * I can't remember the exact time it was that Mr. Messer got

the $1,000 that day. It was somewhere between 9 and 10 o'clock, or it might have been before 9. I didn't look at the clock. It was that morning before the west-bound train that went through at 10:20.

"*Q*. Before that day what had been the custom in reference to getting currency by the other bank for exigencies ? * * *

"*A*. The other bank, the Marlette State Bank, handled the stock business, and people getting checks on that bank would go in there and get the money, and perhaps come to our bank and pay some loans, and in that way they would be short of currency, and we would have more than we needed in the fall of the year or at any time when there would be stock shipping, and, to save us the expense of shipping the currency out, and the Marlette Bank shipping it in, why, they would come over and we would let them have the currency, and then oftentimes it would be the other way; it would be an accommodation to us—vice versa."

The check given by Messer was as follows:

"MARLETTE, MICHIGAN, April 5th, 1904.
"Commercial State Bank, pay to Cy or order one thousand dollars, $1,000.
                                                "C. L. M."

Respondent, after getting the $1,000, went to the Marlette State Bank—"he just stepped inside an instant and stepped out again"—transacted no business in the bank; did not go behind the counter; paid no money into the bank; and, upon leaving the bank, immediately took a train and left the State. This item was paid by the Marlette State Bank and charged to respondent's personal account. At the close of the proofs, the prosecution elected to go to the jury "upon the thousand dollar item of April 5, 1904, and the Preston item of April 4, 1904, of $275." The jury rendered a verdict "finding the respondent guilty of embezzling the sum of $1,000 claimed to have been obtained and converted under date of April 5, 1904."

The case is brought to this court upon exceptions before sentence, and the errors relied upon are (1) the insuffi-

ciency of the information; (2) the erroneous admission of testimony; (3) improper opening statement, remarks, and arguments of the prosecuting officers; (4) failure of the court to give respondent's requests to charge; and (5) errors in the charge of the court as given.

*First.* Respondent's counsel argue that the information is bad because the statute upon which it is based, (*a*) either provides for the punishment of a single offense of which embezzlement is one of the constituent elements, and embezzlement is not properly charged; or (*b*) the statute covers two distinct offenses, viz., embezzlement in the legal sense and fraudulent conversion not necessarily comprising all of the legal elements of embezzlement, in which event the information is bad for duplicity. The view of this statute held by the trial judge was stated by him as follows:

" Now, in relation to the second count, while there may be some doubt about it, I think the statement that Mr. Messer was cashier of that bank, that it was an incorporated bank, and that he is charged with the embezzlement and conversion of the funds owned or in possession of the bank, I think that is a clear statement of the fact that he had as cashier the control and custody of the funds in the possession of the bank. I can see no reason otherwise, and I find no case. While all the cases under consideration contain that allegation, yet I can see no reason for it in the case of a cashier of a bank. Under the law organizing banks and defining the duties of the various officers of the bank, and under the civil cases which have defined the duties and relations of the cashier of a bank to the bank, the statement that he is cashier is a virtual statement that he is in possession and control of the funds of the bank. If that allegation had been in the information, there would have been the opposing statements, *first*, that he was in possession of these funds; and, *second*, that the bank was in possession of the funds.

"It is not an inference or intendment, as we speak of it in the law, but a plain statement of fact, that he was cashier, and that statement involves the other fact that he was in possession of the funds and in control. I think the word 'embezzlement,' as used there in the statute, has a plain and ordinary meaning, coupled with the other

phrase 'embezzle or convert to his own use.' The two phrases may be taken together, and may be used in the information together, and mean that he has fraudulently converted the money of the bank to his own use simply."

Under this interpretation of the statute the terms "embezzle" and "fraudulently convert to his own use" are equivalent or synonymous terms. In our opinion, it was the intention of the legislature, in enumerating the different acts in this statute which should be deemed to constitute larceny, to thereby create different species of larceny. The acts necessary to constitute one species of such statutory offense are described by the word "embezzle." Those necessary to constitute another are described by the words "fraudulently convert to his own use." The terms are not synonymous. The act applies, not only to the officers and agents of the bank, but to its servants as well, and cases will readily suggest themselves where a prosecution would lie for fraudulent conversion when an indictment for embezzlement could not be maintained. Similar statutes have been thus construed. *State* v. *Palmer*, 32 La. Ann. 565; *U. S.* v. *Harper*, 33 Fed. 471; *U. S.* v. *Northway*, 120 U. S. 327; 5 Cyc. p. 585, and cases cited. We think the charge in the information is embezzlement larceny, and that the use of the words "and fraudulently convert to his own use" did not make the count uncertain or double. Although the words used are also found in the statute as describing a different phase of the offense, they are also appropriate to the description of the offense of embezzlement; the usual form of information containing the charge, "and the said money then and there fraudulently and feloniously did embezzle and convert to his own use."

The only usual allegation lacking in this information is the one charging that the money came into the possession of the respondent by virtue of his office or employment, and it is contended that the omission of that allegation rendered the information void. The authorities fully bear out this contention, unless, as argued by counsel for the

people, there is something to distinguish this case from the usual case of embezzlement. The general statutes relating to embezzlement contain in their enumeration of the facts constituting the offense the following or equivalent words, relative to possession of the property embezzled, viz.:

"Any money or other property of another, which shall have come to his possession, or shall be under his charge by virtue of such office or employment." Sections 11565, 11591, 3 Comp. Laws.

The provision as to possession of the property in the statute under consideration is that it shall be in the "possession of such bank;" and the only possession which could be stated in the information in compliance with the statute would be a concurrent possession by virtue of respondent's position. It is argued by the prosecution that concurrent possession is involved in the respondent's office and the allegation that he was cashier at the time he converted the money to his own use is as much a charge that the money was in his possession and under his custody and control by virtue of his office, as though the charge were inserted in express terms. As to the office of cashier, we are of the opinion that this argument is sound. Century Dictionary, definition of "cashier;" *Kimball* v. *Cleveland,* 4 Mich. 606; *Peninsular Bank* v. *Hanmer,* 14 Mich. 208; *Merchants' Bank* v. *State Bank,* 10 Wall. (U. S.) 650; *Taylor* v. *Commercial Bank,* 174 N. Y. 181 (62 L. R. A. 783); 5 Am. & Eng. Enc. Law (2d Ed.), p. 761.

It is further contended that the court erred in permitting evidence of other acts of embezzlement committed within six months next after the time stated in the indictment under section 11782, 3 Comp. Laws, for the reason, *first,* because the intent of such section is to confine its terms to charges of embezzlement under the general statute; *second,* because section 11782 refers solely to embezzlement by a clerk, agent, or servant, which terms do not include the cashier or officer of a bank; *third,* be-

cause section 11562 refers to an embezzlement or conversion occurring in such bank; *fourth*, because section 11562 'embraces not only embezzlement, but fraudulent conversions, and section 11782 is not broad enough in its terms to include the offense of a fraudulent conversion. *Com.* v. *Wyman*, 8 Metc. (Mass.) 247; *People* v. *McKinney*, 10 Mich. 89. This precise question was before the court in *Com.* v. *Wyman*, under statutes substantially identical with our own, and it was there held, as stated in the syllabus of the case:

" The officers of banks are not included in the Revised Statutes, chap. 133, § 10, which provide that in the prosecution of the offense of embezzling the money, etc., of any person by his clerk, servant, or agent, it shall be sufficient to allege generally in the indictment an embezzlement of money to a certain amount and to give evidence on the trial of any such embezzlement committed within six months next after the time stated in the indictment."

In *People* v. *McKinney*, Mr. Justice CHRISTIANCY, delivering the majority opinion of the court, said:

" If, therefore, it was necessary for the information to identify the particular money embezzled by showing the kind of funds or from whom received, it must be because no conviction could be had under this statute without establishing such identity by the proof. The very able argument of the defendant's counsel upon the necessity of specifying the kind of funds rests mainly upon the ground that, under statutes in reference to embezzlement by clerks, agents, and servants of private parties, this particularity was held to be necessary until statutes were passed dispensing with it, and that the only provisions of our statutes on this subject are section 5945, 2 Comp. Laws 1857, which is confined to clerks, agents, and servants, and section 6061, 2 Comp. Laws 1857, which applies only to the crimes of robbery and larceny.

" We do not think this case falls within either of these dispensing provisions; but, on the other hand, we do not think it falls within that class of cases with reference to which they are held to be necessary. In the case of clerks, agents, and servants of private parties, there is always a principal capable of scrutinizing the acts of

those in his service and whose private interest prompts him to vigilance, who has at all times power to direct and control the kind of funds to be received and to change this direction at pleasure, and the custody or management which those in his service may have of his money or property is, in general, but momentary or for a short interval, to be handed over to the principal from day to day or other short periods, or whenever he may choose to resume or assume its custody or management. The acts of such servant or clerk are generally performed under the direct supervision or control of the principal, who, therefore, has, or may at any time have, full and accurate knowledge of the character of the particular sums and from whom received, and possesses facilities for tracing out the facts while transpiring or recent."

In *People* v. *Bringard*, 39 Mich. 22, it was held that a township treasurer was properly convicted of embezzlement under section 309, 1 Comp. Laws 1871, and section 7580, 2 Comp. Laws 1871 (section 11565, 3 Comp. Laws 1897), and that a general allegation of embezzlement was sufficient under section 7811; the court saying:

"It is also objected that the information is defective in not containing specific allegations of the sums embezzled. But the statute (2 Comp. Laws [1871], § 7811) expressly authorizes a general allegation without specifying particulars, and allows evidence thereunder of any embezzlement within six months of the day stated in the information. This objection, therefore, is groundless."

See, also, *People* v. *Butts*, 128 Mich. 208; *People* v. *Hawkins*, 106 Mich. 479.

In *State* v. *Kortgaard*, 62 Minn. 7, the court also had substantially this same statute under consideration. The court said, in considering the interpretation of the statute:

"The learned counsel is somewhat in error as to the history of this statute. As a matter of fact, we inherited it, or at least adopted it, from Wisconsin, of which we were formerly a part. Wisconsin presumably adopted it from Michigan, of which it was once a part. Michigan probably adopted it, either mediately or immediately, from Massachusetts, which, so far as we are advised, was the

148 MICH.—12.

first State to enact such a statute. An examination of the decision of the court in *Com.* v. *Wyman* will show that it was not made upon this section standing alone, or upon the ground that there was anything either in the language or in the purpose of the statute, considered by itself, which required any such construction. In fact, the court impliedly admits that, construed by itself, it would apply to officers of incorporated companies, including banks; but they arrived at the legislative intent from the position which the section occupied in the statutes, and from the existence of other provisions expressly and solely applicable to embezzlement by bank officers.

"Hence, whatever might have been urged in favor of this construction, did we retain the special and express provisions relating to embezzlement by bank officers corresponding to those of Massachusetts relating to the same subject, is deprived of all force, in view of the fact that these special provisions have all been repealed, and that subdivision 2, § 415, of the Penal Code (Gen. Stat. 1894, § 6709, subd. 2), has been enacted, which applies to all cases of embezzlement, and wipes out all distinctions which may have previously existed between embezzlements by officers of banks and by any other officer or agent. By thus doing away with all such distinctions, and enacting a single provision covering all embezzlements, and at the same time retaining in full force Gen. Stat. 1894, § 7262, the conclusion seems to us irresistible that the legislative intent was that this section should apply alike to all cases falling within the provisions of subdivision 2, § 415, of the Penal Code (Gen. Stat. 1894, § 6709, subd. 2). Its language is broad enough to include all such cases, and, when its purpose is considered, embezzlement by bank or other corporate officers is clearly within the mischief intended to be remedied. While all agents are not officers, yet all officers are agents."

We have not the same reason for declining to adopt the construction placed upon this statute by the courts of the State from which we adopted it; but, on the other hand, the presumption that a statute adopted from a sister State is adopted with the construction placed upon it by the courts of that State does not apply to this statute. The decision in *Com.* v. *Wyman* was rendered at the October term, 1844, while the statute under consideration was

adopted in this State at least as early as 1838, appearing in its present form in the Revised Statutes of 1838 as pt. 4, tit. 1, chap. 11, section 10, pp. 652, 653, while the statute as to embezzlement by bank officers appears on pages 629, 630, as section 25, in the same words as section 11562 of the present Compiled Laws. Our interpretation of the statute is therefore freed from the presumption arising from the adoption of a statute which had received an authoritative construction.

"An essential element upon which the presumption is based is that the statute has already received a known and definite construction. Decisions in the State or sovereignty in which the statute was originally enacted subsequent to the adoption of the statute by another State will not be controlling in the latter." 26 Am. & Eng. Enc. Law, p. 702.

As said by the supreme court of Minnesota, "while all agents are not officers, yet all officers are agents." As the statute includes bank officers within its terms, we see no good reason why it should not be held to apply to them. In our opinion, it was the intention of the legislature that this remedial statute should apply to every act of embezzlement which was fairly embraced within its terms, and we therefore hold that the circuit judge did not err in admitting evidence of embezzlements within the six months' period.

There is nothing in the decision of this court in *People* v. *McKinney* which is inconsistent with this result. It was there said that the statute providing for the punishment of embezzlements in the State treasury did not come within the provisions of the section under consideration, which related to private parties. The section under which respondent was prosecuted does relate to private parties, and does come within the provisions of section 11782.

This holding also disposes of the objection that the people should have been confined, in asking for a conviction, to the first act to which they directed their proofs.

Counsel for respondent also took exception and assign

error upon the following statement in the argument of the prosecuting attorney:

"We didn't have any occasion before this case was here to know what Miss Hough's knowledge of the books was. We didn't know what she was going to swear to. How could we tell? Didn't she tell all about these transactions, willing to tell all she knew? That's the reason Mr. Bradford isn't here. Mr. Bradford went through the books and furnished the information we desired, and I want to say further that in every particular it corresponds with Miss Hough."

Upon objection being made to this statement, the court said:

"A statement of what a witness might swear to who is not put on the stand is not legitimate."

From the statement of the prosecutor it appears that his contention was that Bradford's testimony would corroborate Miss Hough's as to the showing made by the books, which were in court and would speak for themselves. This fact and the fact that the jury found respondent guilty of embezzling the $1,000 obtained from the Commercial Bank, which item was never put upon the books by Messer, and was not proved by the testimony of Miss Hough, but by the testimony of the assistant cashier, Merrill, convince us that respondent could not have been prejudiced by the error.

Respondent's counsel also contend that the court erred in refusing to give respondent's twelfth request to charge, which was as follows:

"The respondent has a right to rely upon the insufficiency of the people's case, and, if he does this and does not take the stand in his own behalf, I charge you that no inference can be drawn against him because thereof."

It is claimed by the prosecuting attorney:

"The matter involved in this request was given to the jury by the court, but that it has been omitted from the printed record, and in our main brief, by inadvertence, the same was not referred to. The court instructed the

jury upon this proposition during the course of the closing argument by Mr. Farr, prosecuting attorney, the same having occurred and was given in the manner following:

"'*Mr. Farr:* Why, then, I ask you, Mr. Messer, was it on the morning of the 5th of April last that with the statement upon leaving the bank that he was going down to the elevator, was the occasion of saying to the bookkeeper that he was going to the elevator? At that time, when at that time you knew that your intention was to take the 10:20 train out of there? There is but one person on earth today that knows, and that is Messer. What was the occasion? What was the reason? Did that $4,000 bank stock—

"'*Mr. Walsh:* Take exception for the defendant to that statement in reference to Mr. Messer.

"'*The Court:* It is possible the exception is taken on the ground that you are arraigning the defendant for not going on the stand. I will say to the jury that no stress whatever is to be laid upon the fact that the defendant did not go on the stand in this case, and no advantage can be taken of it. There is nothing to be considered in relation to that.

"'*Mr. Walsh:* That's the reason I take the exception.

"'*Mr. Farr:* There is no such intention at all to criticise the defendant because he didn't go on the stand.'"

This request should have been given. *People* v. *Provost*, 144 Mich. 17. In that case, we held, after full consideration, that the respondent was entitled, as a matter of law, to have such a request given, and that it was reversible error to refuse it, although the attention of the jury had not been called to the fact that respondent had not taken the stand. I do not think that the statement of the court, upon objection being made to the prosecutor's argument, disposes of the question. The statement of the court might cure the error in the prosecuting attorney's reference to the failure of respondent to take the stand, but I do not think it warranted the court in refusing the request on the ground that it was already covered, if that was the ground. In view of the fact that the attention of the jury had been called to the failure of the respondent to take the stand, he had a right to have an explicit instruction given, to insure that the jury should have a proper understanding of his statutory right.

It is also argued by counsel for respondent that the

court erred in receiving evidence outside of the check for the purpose of showing that the check was a mere memorandum. The paper referred to was not a check, as commonly understood, and it was entirely proper to show the circumstances attending its execution. Even if it had been a check, the prosecution would not have been debarred from showing that its accomplished object was to obtain currency for the bank, and not for respondent. This was not a suit between private parties based on the so-called check.

Error is also assigned upon the refusal of the court to give respondent's second request to charge, which was as follows:

"If you find that the respondent obtained the sum of $1,000 from the Commercial State Bank on the 5th day of April, 1904, in the manner shown by the evidence in behalf of the people, this would not constitute the offense with which the respondent is charged, if he, the respondent, at the time of receiving the money entertained the intent to then and there appropriate the same to his own use. Such conversion having occurred outside of the Marlette State Bank would not be the offense which is charged in this proceeding."

We think this request was properly refused. If the money obtained from the Commercial Bank was the money of the Marlette Bank, and respondent converted it to his own use, outside of the premises of the latter bank, such conversion constituted "larceny in such bank," in the meaning of the law. *People* v. *McKinney*, 10 Mich. 54.

For the error above referred to, the judgment is reversed, and a new trial granted.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.