# CHARLESTON.

---

STATE *v.* J. RUSSELL SNODGRASS.

Submitted September 19, 1922.   Decided September 26, 1922.

1. CRIMINAL LAW—*Unlawful Arrest Not Bar to Prosecution Under Subsequent Indictment.*

    The unlawful arrest of one suspected of a crime is no bar to his prosecution for the offense upon a proper warrant or indictment subsequently issued or found against him.   (p. 556).

2. WITNESSES—*Testimony of Officers as to Commission of Offense Not Inadmissible Because Arrest Made Without Warrant.*

    The testimony of witnesses to the effect that one charged with crime committed certain acts which constitute the

offense, is not rendered incompetent because such witnesses, who are officers, subsequently arrested the alleged offender without a warrant.   (p. 557).

3.    CRIMINAL LAW—*Pertinent Information Communicated Through Any of the Senses Admissible.*

The testimony of a witness is not limited to the facts observed by him through anyone of the senses.  Information communicated through any of his senses is proper matter of evidence, if otherwise pertinent.  (p. 557).

Error to Circuit Court, Marion County.

J. Russell Snodgrass was convicted of a violation of the prohibitory laws, and he brings error.

*Affirmed.*

*Henry S. Lively,* for plaintiff in error.

*E. T. England,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

RITZ, JUDGE:

The defendant by this writ of error seeks reversal of a judgment of the Criminal Court of Marion County, which judgment the Circuit Court of said county refused to review, convicting him of a violation of the prohibition laws, and sentencing him to pay a fine, and to be imprisoned in the county jail.

It appears that just prior to the 6th day of July, 1921, the sheriff of Marion county had information that the defendant was engaged in the liquor business in violation of law.  Several attempts had been made before that time to detect the defendant in his supposed violations of law, but the sheriff says that on each of the former occasions in some way the defendant received notice of the operations of the officers against him, and for that reason the same were ineffectual.  On this occasion, in order to prevent the defendant from having notice of his movements, the sheriff left the county seat late at night and reached Mannington, the place where the defendant was thought to be operating, in the night, and did not allow his presence there to be known until nearly noon of the next day, believing that by

that time the defendant would be on the road with his supply of liquor, and could not be notified of the presence of the officers before he could be detected. Shortly before noon on the 6th day of July the sheriff, together with some of his deputies, left Mannington in an automobile over the road upon which they expected the defendant to be travelling toward Mannington. At a point some distance from the town of Mannington they met an automobile in which were riding four persons, the defendant being one of them. Upon approaching this machine the sheriff observed the defendant riding on the front seat with the driver with a large package wrapped up in newspapers in his possession. He held up his hand as a signal for the automobile to stop, but instead of stopping the sheriff says that the defendant, with whom he is well acquainted, called to the driver to go on, and that the automobile, instead of reducing its speed, increased its speed at that time; that immediately thereafter the defendant raised the package which he was carrying and struck it violently across the automobile door, as a result of which a number of bottles were broken and the fragments of broken glass and the contents thereof cast upon the road and in the automobile; that immediately upon this happening the sheriff's party turned their car and went in pursuit of the car in which the defendant was riding. After traversing some little distance they overtook this car, but the defendant was not in it at that time. They placed the other parties under arrest and observed in the car at the place where the defendant had been sitting evidence of the fact that the bottles had been broken and a large part of their contents spilled in the car. They made like observations with like results at the point where the sheriff observed the defendant breaking the package. Not only was there broken glass upon the ground indicating that a number of bottles had been broken, but there was evidence that they had contained a considerable quantity of liquid, and the sense of smell indicated to all of the officers present that it was whiskey. Information was given by someone that the defendant was at the house of a party

living along the road, and upon going there he was discovered and arrested. At the time of his arrest the officers
swear that there was a very strong odor of whiskey emanating from his clothes. He was taken under arrest to Mannington, tried before a justice of the peace, and found guilty,
and upon appeal to the Criminal Court of Marion County
tried before a jury with a like result. The Circuit Court
of that county refused to review the judgment of conviction,
and this writ of error is prosecuted for that purpose.

The testimony given by the sheriff is corroborated in the
main by the other officers who accompanied him, and to
some extent by one of the parties who was in the car with
the defendant. The defendant himself says that he had no
whiskey on the occasion referred to; that he did not break
any bottles on that occasion; and so far as he knew there
was no whiskey in the automobile in which he was travelling.
His brother, who was one of the passengers in the car sitting
in the rear seat, testified that he did not see any of the
things testified to by the officer.

The defendant insists that the judgment complained of
should be reversed upon the ground that he was unlawfully
arrested, the sheriff not having any warrant for his arrest
at that time, and that no warrant ever was issued for his
arrest until after he had been tried by the justice of the
peace and had been convicted and sentenced to confinement
in jail; that the evidence offered upon the trial should not
have been received for the reason that it was procured by
illegal means; and, further, that the evidence produced is
not sufficient to sustain the judgment.

There is nothing in the defendant's first contention. The
record shows that the defendant was tried before the justice
upon the warrant found in the record, issued upon a proper
complaint, and there is nothing to justify the assumption
that the warrant was not issued until after he was tried and
convicted. There is no merit in the contention that he cannot be prosecuted for the offense because he was unlawfully
arrested. Assuming, without deciding, that the defendant's
arrest was unlawful under the circumstances, the sheriff

not having a warrant at the time, this would not discharge him from prosecution for the offense, nor would it justify his discharge from custody after a proper warrant had been issued and he had been held under that warrant. Wharton's Criminal Procedure, § 59; *Pettibone* v. *Nichols,* 203 U. S. 192, 7 Am. & Eng. Anno. Cases 1047; *Ker* v. *The People,* 110 Ill. 627; *Elmore* v. *The State,* 45 Ark. 243; *State* v. *Ross,* 21 Iowa 467; *Kingen* v. *Kelley,* 3 Wyoming 566; *Baker* v. *The State,* 88 Wis. 140; *State* v. *Brewster,* 7 Vt. 118; *State* v. *Day,* 58 Iowa 678.

There is no more merit in the defendant's contention that the evidence of the sheriff and his deputies should not have been admitted upon the ground that it was acquired by unlawful means. To support this contention reliance is had upon the case of *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, and kindred cases, holding that where evidence is procured by an unlawful search and seizure it cannot be used in the prosecution of one for crime. Pretermitting the question of the correctness of the doctrine announced by those cases, has it any application to the evidence offered here? None of the evidence offered was procured by any search or seizure. It was simply by observing what transpired upon a public highway of Marion county. It cannot be said that because a party who happens to observe an offense being committed is a public officer, and does not at that time have a warrant for the offender, if he subsequently arrests such offender without a warrant, he is incompetent to testify to what he perceives. In this case there was no infringement upon the rights of the defendant which resulted in the production of any of the evidence offered. If it can be said that his arrest was unlawful, it was accomplished after all of the evidence offered was obtained. If it is true that the defendant's arrest under the circumstances was unlawful, and upon this question we express no opinion, as it is entirely immaterial for the purposes of this case, then the party making the unlawful arrest might be sued in a civil action for damages; or, according to many of the authorities, might be prosecuted for a common law misde-

meanor. Whether the arrest of the defendant subsequent to the commission of the crime was lawful or unlawful was not material upon the trial of the charge against him. It did not in any wise characterize the charge made against the defendant, or throw any light upon the real issue involved. Nor can we reverse the judgment upon the ground that the evidence did not justify the defendant's conviction. He contends that he was convicted upon the evidence of the sheriff and his deputies which they procured by the exercise of the sense of smell alone, and that this being the case it is too uncertain and unsatisfactory to justify a conviction. We know of no reason why information conveyed to a witness by one of the senses should be excluded while information obtained by him through another sense should be admitted. In this case the evidence of the state was not based exclusively upon what the witnesses observed through the sense of smell. The sheriff testifies that he saw the defendant raise the package and break it. The witnesses saw the broken glass in the road, and the marks of the fluid upon the roadway, as well as in the automobile. They could not tell, of course, unaided by the sense of smell, whether this fluid was whiskey or not, but from the odor emanating therefrom they were able to swear that the fluid contained in the bottles which had been broken was whiskey. We think the evidence was quite sufficient to justify the conviction.

We find no error in the judgment complained of, and the same is affirmed.

*Affirmed.*