# CHARLESTON.

## STATE *v.* PHIL WALKER

Submitted October 30, 1923.   Decided November 6, 1923.

1. INTOXICATING LIQUORS—*Evidence Sufficient to Sustain Conviction for Possession of Moonshine Liquor.*

Evidence in a trial for unlawfully having in possession moonshine liquor in violation of sec. 37, chap. 32A, Code, that defendant had in his possession a glass jar containing a liquid of the color of moonshine liquor, that he was apparently under the influence of intoxicants, that he concealed

the jar in a small grip or traveling bag; that there was an odor of intoxicating liquor about his person and his companions who congregated around him and the jar while it was opened and on the 'ground, that when approached . by an officer who sought to arrest him and confiscate his liquor he remarked, "no I'll be damned if you get my whiskey," and thereupon resisted arrest ('being assisted therein by his companions), took the jar and his grip, entered his automobile hurriedly, and rapidly drove away while the officer was being held at bay by his companions, together with other lesser actions on his part indicating concealment of intoxicants in his possession, will justify a verdict of guilty as charged in the indictment.    (p. 693).

2.    CRIMINAL LAW—*Error to Refuse instruction That Failure of Accused to Testify is Not to be Considered a Circumstance Tending to Show Guilt.*

Where the accused in the trial of a criminal case does not testify in his own behalf, it is error for the court to refuse an instruction asked for by him that his failure to testify is not to be considered by the jury as a circumstance. showing or tending to show his guilt.    (p. 697).

Error to Circuit Court, Fayette County.

Phil Walker was convicted of having in his possession intoxicating liquor, and he brings error.

*Reversed and remanded.*

*C. R. Somerfield,* for Defendant in error.

*E. T. England,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *W. G. Brown, Prohibition Commissioner,* for the State.

LIVELY, JUDGE:

This writ is to review a judgment and sentence of the circuit court rendered at its September term, 1922, on a verdict, whereby defendant was sentenced to confinement in jail seventy-five days and adjudged to pay a fine of. $100 and costs.    The offense charged against defendant in the indictment is that of unlawfully having in his possession a quantity of moonshine liquor, in August, 1921.    The indictment is against defendant, Phil Walker, Kennie Walker, Edwin Goddard, Dave Goddard and Clyde Fox, charging them jointly

with the offense above stated. At the conclusion of the state's evidence defendant introduced a copy of the testimony taken at a former mistrial in an effort to contradict the principal witness for the state; and then rested. None of the defendants went upon the witness stand nor did they produce any witness except for the purpose of introducing the copy of the former testimony above referred to. The court told the jury that there was not sufficient evidence to convict Kennie Walker, the two Goddards nor Clyde Fox, and directed them to return a verdict of not guilty as to them. The jury found Phil Walker guilty as charged; and after the usual motions, the sentence and judgment followed.

The errors assigned for reversal are: (1) the evidence was not sufficient to sustain the verdict; (2) giving of state's instructions 2 and 3; (3) refusal to give defendant's instructions 6, 7, 8 and 9.

On the first assignment of error it is necessary to closely scan the evidence. It appears that defendant and Edwin Goddard and some other men drove up to a store in an automobile at Meadow Bridge, and defendant asked the clerk if he had anything to drink, and he and the clerk and the other man whose name was not known (afterwards ascertained to be Dave Goddard) went into the store and passed into a back room where there was an ice box and where defendant asked the clerk if there was an officer around. He had a dark brown or red grip which he set upon the counter near the ice box and gave the clerk money to pay for two bottles of coca cola. The clerk stepped into the other room to get the change, and on his return saw defendant with a glass jar on which he screwed the top and which he placed in the grip. This glass container, or Mason jar was about two-thirds full of some white substance which the witness did not undertake to identify but said it was the color of moonshine liquor, or of water or of kerosene. He detected the odor of liquor and was under the impression from the actions, speech and looks of defendant that he had been drinking intoxicating liquor. They then left the store and defendant and his companions went away in the automobile. Logan Gwinn was on the front porch of the store and observed defendant and his companions and the grip, and conceived the idea that defendant

had intoxicants, and immediately went to Squire Fox, who lived in the neighborhood, made complaint that he believed there was liquor in defendant's car, and the justice issued a search warrant, and at the same time some search warrants for other places. Thereupon Gwinn, N. C. McGinnis, a deputy sheriff, and Dillard Fox drove out the road in the direction of Morganette Mountain where they expected to meet constable Flint who was to accompany them in the proposed searches. When they neared the foot of Morganette Mountain, which was about one-half a mile from the store at Meadow Bridge, they observed the defendant and his co-indictees sitting on the bank some distance ahead with two automobiles in the road in front of them. McGinnis approached them, Fox and Gwinn remaining at the car. Gwinn says he followed McGinnis shortly after he left and saw defendant and his companions arise when Gwinn approached them and some one said "By God, you will not get my liquor." Then defendant picked his grip up off the ground, put it in his car and went over the fill into the public road and away. McGinnis, the deputy sheriff, says when he approached them he saw defendant put a cap on the jar which he picked up and put into a yellow traveling bag which he fastened. Witness then spoke to them and told Phil Walker, the defendant, that he would have to take charge of him and his whiskey. Defendant said, "No, I'll be damned if you get my whiskey." At this time another man arose and made about the same reply, and defendant and his companions indicated by their actions that the attempted arrest and seizure would be met by physical force; while the colloquy was in progress between the officer and the men Walker took his grip, entered his car at the suggestion or direction of one of his companions, and hurriedly drove away. After awhile he returned and his companions all drove off with him. McGinnis says the men including defendant seemed to have been drinking; that the jar was a half gallon fruit jar with a galvanized screw top; that the liquid in the jar was white and the color of moonshine liquor; that there was recent vomit on the ground near where one of the men sat on the bank, and he could distinctly detect the odor of whiskey. Another witness, J. J. Harless, had a conversation with defendant

on the day before the occurrence at the foot of Morganette
Mountain, detailed by McGinnis, and said defendant ap-
peared to have had a drink or two of whiskey, and asked
him, the witness, if there was anything in his car which he
wanted. The state then rested its case, and the defendant
introduced Fleshman, the official court stenographer who
reported a mistrial of the indictment at a former term, and
who introduced an official transcript of the testimony of
McGinnis which in some unimportant details varied from his
evidence given at the then trial. The variations are not im-
portant and were evidently not considered so by the jury.
Defendant's counsel assert that this evidence was not
sufficient on which to justify a verdict of guilty; that the
facts tended only to arouse suspicion of guilt but do not prove
the offense charged.

While it is not shown to a moral certainty that the liquid
in the glass container in possession of defendant was liquor,
the facts proven strongly indicate that it was, and the decla-
ration of defendant that he would not have his liquor taken
by the officer, together with the successful efforts of himself
and companions to prevent the officer from taking the glass
jar and its contents in custody was a very strong circum-
stance indicating that it was moonshine liquor and the jury
was fully warranted under all the circumstances to so con-
clude. We think the evidence clearly sustains the verdict.
State v. Hussion, 91 W. Va. 146; State v. McLaughlin, 91
W. Va. 654; State v. Snodgrass, 91 W. Va. 553.

The second assignment is directed to the state's instructions
2 and 3; and more especially No. 3. The first instruction
reads:

> "The Court instructs the jury that if you believe
> from the evidence and circumstances in this case be-
> yond a reasonable doubt that the defendant, Phil
> Walker on the date set out in the indictment had in
> his possession a quantity of moonsine liquor, then you
> should find the defendant guilty as charged in the
> indictment."

Though this instruction was objected to at the trial, de-
fendant raises none in his brief; but he says instruction No.
3 is palpably bad. That instruction reads:

"The Court instructs the jury that the finding of any quantity of intoxicating liquors in the possession of any person other than commercial whiskeys which were obtained and stored in homes for domestic use at a time when it was lawful to do so shall be prima facie evidence that the same is moonshine liquors and the burden of proving the contrary is upon the defendant."

The objection to this instruction is that the court in substance told the jury that the liquor in the jar was actually moonshine liquor and did not leave it to them to determine that fact; and that the burden was upon the defendant to show that the liquor in the jar was not moonshine liquor, but was commercial liquor which was obtained and stored in homes for domestic use at the time it was lawful to do so. We do not so construe this instruction. The court simply quoted to the jury the substance of that part of the statute found in sec. 37 of chap. 32A of the Code, as follows: "the finding of any quantity of intoxicating liquor in the possession of any person other than commercial whiskies which were obtained and stored in homes for domestic use at a time when it was lawful so to do, shall be *prima facie* evidence that the same is 'moonshine liquor.'" The statute defines what shall be presumed to be moonshine liquor. Any quantity of intoxicating liquor, except where it is commercial liquor obtained and stored lawfully, is declared to be moonshine liquor, and unless shown to be otherwise that presumption will stand. It is a presumption of law which may be rebutted, and the burden is upon the person found with such liquid to carry that burden. But does this instruction tell the jury that the liquid contained in the jar was moonshine liquor? It makes no reference to the whiskey in the jar, and simply states a proposition of law laid down by statute. Of course it would be incumbent on the jury first to find that the jar in the possession of defendant contained liquor beyond a reasonable doubt; and that necessity of finding is contained in state's instruction No. 2 above set out. Instructions must be read together. The substance of these two instructions, which were the only ones offered by the state, is to the effect that if the jury believed beyond a

reasonable doubt from the evidence and circumstances that defendant had in his possession a quantity of moonshine liquor then they should find him guilty as charged; and that under the law the presumption was that if it was found that there was liquor in the jar it constituted a *prima facie* case of possession of moonshine liquor and the burden was on defendant to show otherwise in order to be relieved. We do not think the jury could be misled to assume that the court had told them that there was actually moonshine liquor in the jar. That was the very question which they were called upon to solve to their satisfaction beyond a reasonable doubt.

The last assignment is to the refusal of the court to give defendant's instructions Nos. 6, 7, 8 and 9. Instruction No. 6 offered and refused, is to the effect that defendant could not be found guilty if there was any other reasonable hypothesis consistent with his innocence. This instruction in substance was fully given and reiterated in defendant's instruction No. 1, which was given. The same observation may be made of instruction No. 9, which we think was sufficiently covered by defendant's instruction No. 5, given. Defendant's instruction No. 7 in substance told the jury that the fact that defendant had a fruit jar in his possession on the bank of the road as testified to by McGinnis, was not sufficient evidence on which to base a verdict of guilty; that the jury had no right to surmise or guess that the said jar contained moonshine liquor, but that it was necessary to prove that fact beyond all reasonable doubt. This instruction does not take into consideration the evidence of possession by defendant of this same jar together with the grip at the Meadow Bridge store, and the evidence and circumstances at that point tending to show that the jar contained moonshine liquor. It was telling the jury what weight to give to the evidence and tended to eliminate from their consideration all the facts and circumstances which should be considered together with the testimony of McGinnis.

We think there was palpable error in refusing to give defendant's instruction No. 8. It will be remembered that none of defendants took the stand as a witness in their own behalf. They saw fit to remain silent and call upon the state

to establish their guilt beyond all reasonable doubt. The instruction asked for was to tell the jury that the fact that defendant did not go upon the stand to testify in his own behalf should not be looked upon or considered by them as any evidence or even a circumstance showing or tending to show his guilt. This instruction is based upon sec. 19 of chap. 152 of the Code, which provides that the accused at his own request may be a competent witness at his trial; but that his failure to make such request shall not create any presumption against him, nor shall any reference be made to or comment upon such failure by any one during the progress of the trial in the hearing of the jury. The law declares that no presumption shall be formed against a defendant because he does not testify in his defense. We cannot conceive why the jury should not be told what is the law of the land governing the trial of a criminal case presented to them for their verdict. It is a clear right to which the accused is entitled. The jury is sworn to try the issue joined, and a true deliverance make of the prisoner according to the law and the evidence. To properly discharge their oath they should be instructed as to the law. Statutes of this character have been enacted by all of the states and in England; (2 ed. Abbotts Trial Briefs, p. 371,) and it seems to be the almost unanimous opinion of the courts passing upon such statutes that defendant is entitled to such an instruction if he asks therefor. The attorney general has cited one decision to the contrary, namely, *State* v. *Robinson,* 117 Mo. 649. The Missouri statute, sec. 4219, Revised Statutes 1889, provided that if the accused failed to testify such failure should not create any presumption against him; but the concluding words of that section provided that such failure to testify should not "be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place." The court in holding that it was not error to refuse an instruction that the failure of defendant to testify should not create any presumption against him, said: "If the court had given such instruction it would have disobeyed the spirit if not the letter of the law." In these few words the court held the refusal not to

be error.  However, in a later case, *State* v. *Taylor,* 261 Mo. 211, the court practically retracted the position taken in the Robinson case, and held that it would not be error to *give* such an instruction; and said "it would perhaps be a little fairer to defendant to give such an instruction, if he asks it; but in view of the dark and muddy language of the statute, and the holding in the Robinson case, it cannot be held to be reversible error not to give it." In the opinion Judge Faris said that if it was a matter of first impression, in view or the haziness of the statute he would be forced to the view that it was the duty of the court to instruct on the law of the case, but that the law of *stare decisis* governed him, and the Robinson case would be followed.  We do not think the reasoning in the Robinson case is sound; even had the Missouri statute been identical with ours we would not hesitate to refuse to follow it.  The clear intention of the law is that no presumption whatever shall be inferred by the court or jury from the fact that a defendant has refused to request to go upon the stand or to testify in his own behalf. It is the duty of the court to fully instruct the jury upon the law governing the case, and when the instruction is properly worded it should be given.

In the State of Washington the legislature has seen fit to pass a statute which makes it the duty of the court to give such instruction irrespective of the request of defendant; and it has been held that the neglect of the court to give such instruction was error whether defendant had asked for it or not. *State* v. *Myers,* 8 Wash. 177; *Linbeck* v. *State,* 1 Wash. 336.  The great weight of authority is that where the statute provides that the failure of accused to testify in his own behalf shall not raise a presumption against him, it is error for the court to refuse, at the request of the accused, to instruct that such failure shall not be considered by the jury adversely to the accused or that this fact shall raise no presumption against him.  *Thomas* v. *State,* 139 Ala. 80; *Farrell* v. *The People,* 133 Ill. 244; *State* v. *Carnagy,* 106 Ia. 483; *State* v. *Goff,* 62 Kan. 104 (reversing same case reported in 10 Kan. App. ——, 61 Pac. 680); *State* v. *Landry,* 85 Me. 95; *Stout* v. *U. S.* 227 Fed. 799; *People* v. *Provost,* 144 Mich.

17; *People* v. *Messer,* 148 Mich. 168; *People* v. *Emmons,* 13 Cal. App. Rpts. 487; *Threet* v. *State,* 110 Ark. 153; *People* v. *Rose,* 59 N. Y. Sup. Ct. Rpts. (52 Hun.) 33. Even where the instruction has not been requested by the defendant, and the court on its own motion has instructed the jury that they are not to consider adversely the failure of the accused to testify, this action of the court is held not to be error by the great weight of authority. *State* v. *Wisnewski,* 3 Ann. Cas. 907, note. There is an additional citation of decisions on the question under consideration in Abbott's Trial Brief (2d ed.) p. 626.

For the error in refusing defendant's instruction No. 8, we reverse the judgment and sentence, set aside the verdict and award a new trial.

*Reversed; Verdict set aside; New trial awarded.*