18363

The STATE, Respondent, v. James Weldon SWILLING, Appellant

(142 S. E. (2d) 864)

*Messrs. C. Ben Bowen* and *James E. Sparks,* of Green-ville, *for Appellant,*

146

*Messrs. B. O. Thomason, Jr., Solicitor,* and *H. F. Partee, Assistant Solicitor,* of Greenville, *for Respondent,*

June 16, 1965.

BUSSEY, Justice.

Appellant was convicted of the murder of one Christo G. Dunis and sentenced to death by electrocution. The homicide occurred on Sunday, April 5, 1964, at approximately 5:15 P. M., in Pete's Cafe No. 1 in the City of Greenville. At the time, Dunis was manager of the cafe, appellant was a customer therein, and his wife was employed as a

waitress. After a dispute between the parties, relative to the service, or lack thereof, being rendered to appellant, he withdrew a pistol from his pocket and fired in the direction of Dunis at close range six times. One of these bullets proved fatal to Dunis who died the following afternoon.

Appellant interposed a plea of self defense and was represented at the trial below and upon appeal here by court appointed counsel who have most assiduously and earnestly represented him and prosecuted this appeal.

In keeping with our invariable rule of *in favorem vitae*, we have not only considered the exceptions on appeal and the questions briefed and orally argued in this court, but we have also independently searched the record for prejudicial error, whether or not objected to below or made a ground of exception here. As a new trial will have to be ordered, for the reasons set forth below, we limit our discussion of the evidence to only such portions thereof as are necessary to the issues before us.

Appellant was arrested at his home without a warrant approximately two hours after the shooting by two police officers who were called to the scene and were thereafter trying to locate appellant. Appellant either voluntarily surrendered himself, or at least quietly submitted to arrest. No warrant was issued for him until April 16, when a warrant was issued by the coroner of Greenville County, charging him with murder. Appellant asserts that the trial judge should have directed a verdict of acquittal because he was arrested without a warrant, never taken before a coroner, judge or magistrate and confronted with the charges against him or advised of his constitutional rights, and that he was thus denied equal protection of law and due process of law as required by the Constitutions of South Carolina and the United States.

> We are not concerned with any issue as to the admissibility of evidence, by way of confession or otherwise, obtained as a result of the arrest and

detention which appellant contends was unlawful. Assuming, without deciding, that any of appellant's constitutional rights were violated, nothing in the present record appears to indicate that his trial and conviction were in any manner influenced or brought about by any such alleged violation of his constitutional rights. No authority is cited by appellant's counsel in support of the contention that a verdict should have been directed for the reasons assigned. All decisions coming to our attention are to the contrary. Even assuming that his arrest and detention without a warrant were unlawful, such would not entitle him to a directed verdict. The rule concisely stated in 5 Am. Jur. (2d) 796, Arrest, Section 116, as follows:

"The fact that an original arrest may have been unlawful does not affect the jurisdiction of the court, nor is it a ground for quashing the information. And it does not preclude trial of the accused for the offense."

It is universally held that even where a defendant is unlawfully arrested in a foreign state and, as a result of such unlawful arrest, brought within the jurisdiction of the court where the crime was committed, the unlawful arrest of the accused is no ground for discharge or exemption from punishment. One of the leading cases on this point is our early case of *State v. Smith,* 1829, 1 Bailey 283, 19 Am. Dec. 679. For a full discussion of the authorities on this particular point see the opinion in *State v. Waitus,* 226 S. C. 44, 83 S. E. (2d) 629, cert. den. 348 U. S. 951, 75 S. Ct. 439, 99 L. Ed. 743. While most of the decisions deal with unlawful arrest beyond the borders of the state wherein the crime was committed, we call attention to the West Virginia case of *State v. Snodgrass,* 91 W. Va. 553, 114 S. E. 136, wherein the arrest alleged to be unlawful took place within the territorial jurisdiction of the trial court. There the court said,

"Assuming, without deciding, that the defendant's arrest was unlawful under the circumstances, the sheriff not having a warrant at the time, this would not discharge him

from prosecution for the offense, nor would it justify his discharge from custody after a proper warrant had been issued and he had been held under that warrant."

Here, a proper warrant was subsequently issued by the coroner, appellant was indicted, and there is no merit in the contention that the trial judge should have directed a verdict for any of the assigned reasons.

Evidence on behalf of The State was to the effect that the appellant was in the particular restaurant on Saturday afternoon, April 4th, the day preceding the fatal shooting. A witness Brown testified to the effect that on such occasion appellant was drunk, had an altercation with the deceased, and threatened the deceased. A witness for The State, Libby Keith, testified that on the same afternoon, apparently shortly after appellant was supposed to have left the restaurant, he was in the place of business where she worked; that he was drunk and had made the statement, "I'm going to get a gun and somebody will be dead over the weekend."

Appellant asserts that there was error in admitting the testimony of these two witnesses as to his intoxicated condition on the afternoon preceding the homicide. This contention we think is fully disposed of by the decision of this court in *State v. Bush,* 211 S. C. 455, 45 S. E. (2d) 847, wherein it was held that there was no error in admitting evidence to the effect that on the last visit of the accused to the home of the decedent prior to the fatal assault he was drinking and disorderly, made threats against the deceased, and was directed not to return to that home again. Since the testimony of these witnesses both involved threats allegedly made by appellant, his condition at the time of the alleged threats with respect to either sobriety or intoxication was a relevant and proper circumstance for the consideration of the jury.

Appellant also argues that the testimony of the witness Keith as to the threat allegedly made should have been excluded as the words spoken were not

shown to have any reference to the deceased. While general threats, which are not shown to have any reference to deceased, are not as a rule admissible on the question of malice, deliberation or premeditation, still such a general threat is admissible when other facts adduced give individuality to it so that the jury may infer that the threat referred to the deceased. 40 C. J. S. Homicide § 206(c), p. 1110.

Here, we think the evidence as to the threat made directly to the deceased on the afternoon in question clearly gave individuality to the general threat testified to by the witness Keith, and made such admissible.

We now come to a matter which we conclude constituted prejudicial error and requires a new trial. The appellant offered evidence as to the reputation of the deceased for turbulence and violence, but did not seek at any time to put his own character or reputation in issue. In the course of his charge, the trial judge charged the jury as follows,

"I charge you that an accused, when charged with a crime, has the privilege of proving his general good character. The jury can take into consideration the bad reputation of the defendant."

While the quoted language no doubt was inadvertent on the part of the trial judge, it is clear that this language was not only erroneous, but highly prejudicial. Upon the error being called to the attention of His Honor at the conclusion of the charge, he recalled the jury and instructed them to disregard anything he had mentioned about the character and reputation of the defendant.

It is now argued by appellant that prejudice to appellant remained even though the judge instructed the jury to disregard what he had said with respect to appellant's character and reputation. This contention, in the light of the *in favorem vitae* rule, involves the consideration of certain matters which were not made the basis of any exception on appeal.

Although it is not clear to what extent, if any, appellant was intoxicated at the time of the fatal shooting, the record contains much evidence with respect to his drinking. There is evidence that he was drunk on Saturday afternoon; that he was drinking on Saturday night; that he was drinking on Sunday morning prior to the fatal shooting that afternoon, and that he was intoxicated when arrested about two hours thereafter. In the course of his cross examination of appellant, and with reference to the Saturday night immediately preceding the homicide, the solicitor asked appellant the following question,

"Q. That's right, and as a matter of fact you didn't get beat up that Saturday night, did you? You got in a fight that Saturday night, didn't you?

This question was not answered, as an objection thereto was sustained.

The solicitor cross examined the wife of appellant with respect to the events of the morning of the day of the homicide, in the course of which the following occurred:

"Q. He came back—in other words, he went out first to get some breakfast and while he was out getting breakfast he brought back some liquor, too, is that right?

"A. Yeah, he drank it and he stayed right there at home; I made him stay in the house.

"Q. You begged him to stay in the house because you knew when he was drunk he was mean, wasn't he?

"A. No, he wasn't mean to me.

"Q. Wasn't mean to you, but you knew he was mean to other people, didn't you?

"A. No.

"Q. You deny that?

"A. He wasn't mean to people so long as they'd leave him alone, (didn't) start pushing him."

The foregoing quotations from the cross examination of both appellant and his wife are sufficient to show, we think, that the solicitor attempted to inject the character and

reputation of the appellant into the case and create an impression in the minds of the jurors that appellant was a mean, violent, turbulent man, at least when drinking. There is evidence that appellant was drinking much of that tragic weekend.

Under all of the circumstances of the case, we think these questions propounded by the solicitor on cross examination were clearly prejudicial. See *State v. Hester*, 137 S. C. 145, 134 S. E. 885; *State v. Bolin*, 177 S. C. 57, 180 S. E. 809; *State v. Bush*, 211 S. C. 455, 45 S. E. (2d) 847; *State v. Britt*, 235 S. C. 395, 111 S. E. (2d) 669.

When we consider the erroneous charge of the trial judge in connection with the efforts of the solicitor to impugn the character and reputation of the appellant, we do not think it can be said that His Honor's effort to correct the error which he had inadvertently made removed the prejudice to the appellant.

In the recent case of *State v. Britt*, just above cited, even though prejudicial testimony impugning the character or reputation of the defendant was ordered stricken and the jury instructed to disregard the same, it was held that such still constituted prejudicial error and entitled the defendant to a new trial. The opinion in that case contains the following language:

"When it is made to appear that anything has occurred which may have improperly influenced the action of the jury, the accused should be granted a new trial, although he may appear to be ever so guilty, because it may be said that his guilt has not been ascertained in the manner prescribed by law."

Just what effect these matters had upon the jury is only known to the members thereof. We simply reach the conclusion that such could have affected the verdict in the case. If nothing more, such may well have affected the jury, in the exercise of its discretion, as to whether or not to recommend mercy. Our conclusion that the defendant here

is entitled to a new trial is, we think, clearly dictated by numerous prior decisions of this court, some of which are cited above.

The only other questions raised by the appeal require, we think, little discussion. Appellant asserts error because of the admission of the testimony of one Dan Stafford with respect to a conversation between the accused and his wife on Friday, April 3, 1964. We refrain from passing upon whether the admission of such testimony constituted prejudicial error, but simply hold that upon the record before us it was irrelevant. Unless such should become relevant on a retrial of the case, for some reason now not readily apparent, it would be better excluded to avoid the possibility of prejudice.

Error is asserted as to one short phrase in the charge of the circuit judge with respect to the duty of retreat in connection with a plea of self defense. While we doubt that the jury was misled thereby, as contended by appellant, such will not likely re-occur on a retrial of the case.

For the reasons hereinabove set forth, judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.