## 18664

The STATE, Respondent, v. James Weldon SWILLING, Appellant
(155 S. E. (2d) 607)

544

*Messrs. C. Ben Bowen* and *James W. Sparks,* of Green-ville, *for appellant,*

*Messers. B. O. Thomason, Jr., Solicitor,* and *H. F. Partee, Assistant Solicitor,* of Greenville, *for Respondent,*

June 8, 1967.

LEWIS, Justice.

While in Pete's Cafe No. 1 in Greenville, South Carolina, as a customer and following a dispute with Christo G. Dunis, the manager, the defendant fired his pistol in the direction of Dunis six times at close range, inflicting wounds from which Dunis died the following day. The defendant was subsequently convicted of the murder of Dunis and the death sentence imposed. Upon appeal his conviction was set aside and a new trial granted. *State v. Swilling,* 246 S. C. 144, 142 S. E. (2d) 864. Following remand of the case, the defendant was tried a second time, resulting in his being again convicted of murder and imposition of the death sentence, from which this appeal comes.

The questions presented by the exceptions all relate to alleged error in various rulings of the trial judge, which it is charged deprived the defendant of a fair and impartial trial. Since this is a death case, these questions are decided without regard to whether they are properly before us under the usual rules of appellate procedure.

At the outset of his second trial, the defendant moved for a continuance and a change of venue upon the ground that he could not obtain a fair and impartial trial in Greenville County because of alleged prejudicial pretrial publicity in the local newspapers. This motion was refused and the defendant contends that this was error.

The first conviction of the defendant was reversed upon the ground of possible prejudice from the injection into the

trial of the character and reputation of the defendant. The opinion of this Court was filed on June 16, 1965, and there appeared in the Greenville daily newspapers on June 17th and 18th, 1965 an account of the Court's opinion under headlines stating: "Court orders new trial for Swilling" and "James Swilling to be tried again on the same charge." The article of June 18th carried a rather detailed review of the opinion of the Court, including a statement of the grounds for reversal. Both articles carried the statement that the defendant had been previously found guilty of the murder of Dunis and sentenced to death.

The second trial of the defendant commenced on September 7, 1965, approximately three months after the publication of the foregoing news articles; and there appeared in the morning newspaper on that date a news article setting forth the facts relative to defendant's prior trial, conviction and sentence, together with the statement that the Supreme Court reversed the prior conviction and ordered a new trial. It was stipulated that the newspapers in which the articles appeared had a circulation of approximately 91,000.

There was also a news broadcast over the local radio station at 7:30 A. M. on the day of the commencement of the second trial, in which the fact was stated that the defendant had been previously tried, convicted and sentenced to death.

The record contains no showing from any juror that he actually read or heard the foregoing news account of defendant's prior trial. In the selection of the jury, each juror was examined on his *voir dire* and accepted after satisfying the court of his ability to give the State and the defendant a fair and impartial trial. When the jurors were presented, the defendant interposed no objection to any of them because of prejudice from newspaper publicity.

The defendant contends that the wide circulation through the news media of the facts concerning his prior conviction and sentence and the grounds of reversal made it improb-

able that any juror called at the second trial was without such information. He then argues that such knowledge on the part of the jurors of the result of the former trial made it most likely that the second jury would be influenced thereby and also find him guilty, thereby depriving him of his right to a fair and impartial trial.

Motions for a change of venue or continuance upon the ground of prejudice created by publicity in newspapers or other news media are addressed to the sound discretion of the trial court, with the burden resting upon the movant to satisfy the court that the jurors had been influenced by the publicity. 21 Am. Jur. (2d), Criminal Law, Section 426; *State v. Britt,* 235 S. C. 395, 111 S. E. (2d) 669; *State v. Byrd,* 229 S. C. 593, 93 S. E. (2d) 900; *State v. Wright,* 228 S. C. 432, 90 S. E. (2d) 492; *State v. Whitener,* 228 S. C. 244, 89 S. E. (2d) 701.

There is a total absence of any showing of prejudice resulting from the pretrial publicity in question. The defendant has failed to show that any juror was cognizant of the facts revealed in the newspaper and radio news releases concerning the defendant's prior trial, or that anything developed in the drawing of the jury which would indicate prejudice on their part. On the contrary, the record shows that the jurors were examined on their *voir dire,* and apparently accepted after a satisfactory inquiry as to bias and prejudice, for the defendant registered no objection to the form or extent of such examination.

In order to sustain defendant's position, we would not only have to assume that the jurors were cognizant of the pretrial publicity, but would have to indulge the further presumption, without basis in fact, that they were prejudiced thereby. There is nothing in the contents or nature of the pretrial publicity to warrant any such presumption. We find no abuse of discretion in the refusal of the trial judge to grant defendant's motion for a continuance and change of venue because of alleged prejudice from pretrial publicity.

The defendant also contends that he was prejudiced by newspaper publicity during the progress of his second trial. As previously stated, the retrial of the defendant commenced on the morning of September 7, 1965. On that day there appeared in the afternoon newspaper an account of the beginning of the trial. This article, among other details of the trial in progress, carried the statement that Swilling had been previously convicted of the murder of Dunis and sentenced to the electric chair, but had been granted a new trial by the Supreme Court under a ruling that "Swilling's character was not on trial." There also appeared on June 8th an article covering the previous day's trial proceedings in which it was stated that Swilling was being retried for the shooting of Dunis, the Supreme Court having reversed a death sentence imposed at the previous trial. Both articles gave a brief summary of the testimony of the witnesses who had testified.

The trial consumed the greater portion of two days, and the jurors were permitted to separate during the recesses of court and return to their homes overnight. In each instance, before allowing the jurors to separate, the court admonished them not to discuss the case with anyone or permit it to be discussed in their presence during their absence from the courtroom.

The defendant takes the position that, since the jurors were permitted to separate during the trial, they had access to the foregoing news reports of the results of the prior trial which, as contended in the case of the pretrial publicity gave the jurors information to which they were not entitled and which was calculated to prejudice them in their deliberations.

This question was not raised during the trial and was first mentioned after the verdict of the jury had been rendered and the jury dismissed. The objection that the newspaper publicity during the trial adversely affected the defendant was overruled by the trial judge.

We have long held that the question of whether or not jurors shall be kept together during a trial, including capital cases, is a matter left to the sound discretion of the trial judge; and, where jurors are permitted to separate, the action of the trial judge thereabout will not be upset except upon a clear showing of abuse of such discretion. *State v. Williams,* 166 S C. 63, 164 S. E. 415.

The record contains no affirmative showing of prejudice to the defendant from the newspaper publicity during the trial. It is not shown that any juror actually read the news articles in question. Assuming however that the jurors probably read the newspapers, there is a total absence of any showing of actual prejudice to the defendant therefrom. The newspaper articles were not such as to automatically preclude a fair trial and, under such circumstances, prejudice will not be presumed. On the contrary, in the absence of a showing of prejudice, "we must assume that each and every member of the jury sought honestly and impartially, under the law, to discharge his duty; and that he observed the oath required of a juror." *State v. Williams, supra.*

We find no merit in the contention that the newspaper articles published during the trial of the defendant adversely affected his right to a fair and impartial trial.

The defendant next contends that the trial judge was in error in refusing to permit cross examination of a police officer, W. L. Jackson, as to statements made to him by witnesses at the scene during the investigation of the shooting. The police officer arrived at the scene about fifteen (15) minutes after the shooting and made an investigation during which he talked with several witnesses who were present. After eliciting on cross examination the names of some of the witnesses with whom the officer talked, counsel for defendant sought to question the officer as to what the witnesses told him with regard to a difficulty which occurred

between the deceased and three negro men immediately before the shooting. Upon objection by the State, the trial judge ruled the testimony inadmissible.

The testimony as to what the witnesses told the officer during his investigation was not offered for the purpose of contradiction of the witnesses. It was clearly hearsay and properly excluded. In any event, the refusal to permit the officer to testify as to what the witnesses told him relative to the difficulty between the deceased and the negro men resulted in no prejudice to the defendant, for the eye witnesses testified as to the details of the incident and it was an undisputed fact in the case.

The next question relates to an alleged prejudicial statement or ruling by the trial judge during the cross examination of police officer Luther Dill and to the refusal of the trial judge to instruct the jury relative to the provisions of Section 17-251 of the 1962 Code of Laws. The two questions present the same issue and will be disposed of together.

During his cross examination, Officer Dill was asked whether the defendant was ever carried before a judge or magistrate and "confronted with his rights" prior to the time of the issuance of an arrest warrant. His response was: "Not that I know of." Following which, the trial judge stated: "Stop at that point. It's quite obvious he was at one time." The purpose of the foregoing testimony was to present to the jury for its consideration the claim of the defendant that he was unlawfully arrested without a warrant and that upon his arrest he was not taken before a judge or magistrate as required by Section 17-251. The position of the defendant, that the jury was entitled to consider such testimony, was again urged by a request to the trial judge that he instruct the jury as to the foregoing statutory provisions. This request was denied upon the ground that such would not constitute a defense to the charge of murder or entitle the defendant to an acquittal. This was in accord with our holding in the prior appeal. 246 S. C. 144, 142 S. E. (2d) 864.

Where a jury finds a defendant guilty of murder and decommends mercy the sentence is automatically life imprisonment. A verdict of guilty without such recommendation carries the death penalty. The defendant contends here that, even if he was not entitled to a directed verdict upon the ground that his arrest and detention for the crime charged violated his constitutional rights, he was entitled to offer testimony relative to his arrest and detention and have the issue considered by the jury in determining whether, having found him guilty, he should receive a life or death sentence.

The foregoing contention is without merit. As stated in our prior opinion, there is no issue in this case "as to the admissibility of evidence, by way of confession or otherwise, obtained as a result of the arrest and detention which appeallant contends was unlawful." Therefore the facts and circumstances surrounding the arrest and detention of the defendant could have no possible relevance or bearing upon the nature of the crime committed or the punishment to be imposed.

The position is also taken that the trial judge erred in refusing to permit counsel for the defendant to be heard in regard to objections interposed to the admissibility of testimony. The record shows that in several instances the trial judge ruled upon objections made by counsel without permitting argument thereon. The defendant contends that he was thereby denied the right to present his legal positions to the court and that this was prejudicial error.

A litigant has no legal right to have his attorney present argument during the course of a trial on every objection made to the admissibility of testimony. This is a matter expressly left to the control of the trial judge under Rule 11 of the Circuit Court Rules wherein it is provided that "[n]o argument shall be had on any objection to the admissibility of evidence unless especially requested by the presiding Judge." The right of defendant's

counsel to enter such objections during the trial as he saw fit was preserved; and defendant was deprived of no right, nor prejudiced in any way, because the trial judge apparently concluded in several instances that argument of counsel would be of no benefit in ruling upon the objections made.

The next question arose during the cross examination of Belle Bennett, a witness for the State. She was present at the time of the commission of the alleged crime and testified as to what transpired. On cross examination by counsel for the defendant, the witness testified that she was, in company with her husband, at the scene of the crime; that she had been married twice and at the time of the second trial had been separated from her second husband for about eight months; and that she operated the tap room, a beer parlor, and worked at the desk in the Cambridge Hotel, located in Greenville. Following the foregoing testimony, counsel asked the witness the following question: "Are you also the madam for the Cambridge Hotel?" Before the witness answered, an objection by the State to the question was sustained by the court. The defendant contends that in sustaining the objection the trial judge improperly restricted the right of cross examination of the witness for the purpose of impeaching her credibility.

The general rule followed in this State is that the trial court has broad discretion in determining the general range and extent of cross examination, subject to the limitation that the inquiry must relate to matters pertinent to the issue, or to such as tend to affect the credibility and veracity of the witness; and the exercise of such discretion will not be disturbed except in cases of manifest abuse or injustice. *State v. Burnett,* 226 S. C. 421, 85 S. E. (2d) 744.

The evident purpose of inquiring as to whether the witness was the madam of the hotel in which she worked was to discredit the veracity of the witness by impeaching her moral character. The range of cross

examination as to such matters was within the discretion of the trial judge and we find no reason to interfere with the exercise of his discretion in this case. *Kennington v. Catoe,* 68 S. C. 470, 47 S. E. 719; *State v. Gibbs,* 113 S. C. 256, 102 S. E. 333.

The defendant also contends, as he did in his prior appeal, that the trial judge should have directed a verdict of acquittal because he was arrested without a warrant and never timely taken before a coroner, judge or magistrate and confronted with the charges against him or advised of his constitutional rights. We held in the prior appeal that, assuming his arrest and detention was unlawful, such fact alone would not entitle the defendant to a directed verdict of acquittal.

However, the defendant takes the position in this appeal, which was not dealt with in our prior opinion, that his alleged unlawful arrest and detention deprived him of his right to a reasonable opportunity to secure witnesses in his behalf and to develop his defense. He argues that the failure to take him before a magistrate or judge, or the delay in doing so, so that he might be timely confronted with the charges against him, has forever deprived him of the opportunity to possibly obtain material evidence in his behalf, which cannot be remedied by a new trial but only by a dismissal of the charges against him.

In order to dispose of the issue, we set forth the events which transpired in their chronological order:

April 5, 1964—About 5:15 P. M. shooting occurred.

April 5, 1964—About 7 P. M. defendant arrested at his home without a warrant, stating that he was ready to turn himself in—pistol taken from mantel piece and voluntarily turned over to officers by defendant's son at request of defendant.

April 6, 1964—Victim of shooting died.

April 16, 1964—Coroner's inquest held, after which a warrant was issued charging defendant with murder and served on defendant in Greenville City jail where he had

been held since his arrest. Defendant then transferred to Greenville County jail.

May 1964—Defendant indicted for murder by Grand Jury at May Term of General Sessions Court for Greenville County, which commenced on first Monday in May (Section 15-285, 1962 Code of Laws). Upon indictment, present counsel appointed by court to represent defendant.

May 1964—Trial of case continued until August, 1964, term of court.

August 31, 1964—Defendant arraigned. Represented by appointed counsel.

September 1, 1964—Defendant found guilty of murder and sentenced to death.

June 16, 1965—Opinion of Supreme Court filed reversing conviction and ordering a new trial.

September 7, 1965—Second trial commenced with same attorneys representing defendant, resulting in second conviction of murder and imposition of death sentence, from which present appeal prosecuted.

It will be seen from the foregoing that the defendant was arrested and placed in jail on April 5, 1964, where he has since remained. A formal warrant charging him with murder was not issued and served upon him until eleven days later, on April 16, 1964. It was agreed that the defendant was not taken before a magistrate or judge after his arrest or advised of his constitutional rights until his arraignment in May, 1964, when counsel were appointed to represent him. He was tried the first time in August, 1964, and his second trial was in September, 1965.

The defendant contends that the officers were required, under Section 17-251, *supra,* 1962 Code of Laws, upon arresting him without a warrant, to take him before a judge or magistrate to be dealt with according to law, and that, if such had been done, "he would clearly have been entitled to release under bail," which "would have provided him with the primary opportunity for which the right to bail is

offered, *i.e.,* the opportunity to develop a defense, including the opportunity to obtain counsel."

Section 17-251 provides:

"Upon (a) view of a felony committed, (b) certain information that a felony has been committed or (c) view of a larceny committed, any person may arrest the felon or thief and take him to a judge or magistrate, to be dealt with according to law."

We may assume that, under the foregoing statute, upon arresting the defendant without a warrant, the officers were required to take him before a judge or magistrate within a reasonable length of time thereafter. However, the failure of the officers to do so does not warrant reversal of defendant's conviction unless such failure has deprived the defendant of a fair trial.

Even if defendant had been taken before a judge or magistrate, he would not have been entitled to release under bail as a matter of right, as apparently contended. Article 1, Section 20, Constitution of South Carolina; Section 7-8, 1962 Code of Laws. In any event, the record contains no showing that any application was ever made for bail, even after appointment of counsel.

There is no contention, and properly so, that defendant's conviction was brought about or affected in any way by evidence, confession or otherwise, obtained as a result of his detention. Able and resourceful counsel were appointed to represent him over three months prior to his first trial and approximately sixteen months before the second. The shooting took place in a public cafe where others were present and where defendant's wife was working at the time as a waitress. He had the sources readily available to obtain the names of every person present at the time; and, if the testimony of any person present would have aided the defendant, their attendance at the trial court, no doubt would have been obtained. We carefully examined the record before us and find it totally lacking in any show-

ing, by fact or reasonable inference, that the failure to take the defendant before a judge or magistrate deprived him of a fair trial.

The remaining exceptions relate to alleged error in admitting testimony relative to the weapon used by the defendant in the shooting, and obtained from him at the time of his arrest.

The weapon was introduced in evidence at the first trial but, between that time and the second trial, it was misplaced or lost. At the second trial, the court reporter was sworn as a witness and asked if the pistol was introduced at a former trial involving the defendant and if it had been lost since that time, to which she replied in the affirmative. The defendant takes the position that reference to the former trial of the defendant was prejudicial.

This exception is overruled. The reference to a former trial was only to the extent necessary to explain the failure of the State to introduce the weapon in evidence, and resulted in no prejudice to the defendant.

Finally, it is contended that testimony relative to the fact that the weapon used in the shooting had been placed in the hands of the court reporter and subsequently lost was inadmissible because the weapon was obtained from the defendant as a result of an unlawful search.

The defendant was arrested without a warrant, and the weapon was obtained at the time of his arrest without a search warrant. The position of the defendant is that the arrest without a warrant was illegal and therefore the weapon was obtained illegally.

We do not think the present facts show that the weapon was obtained as a result of a search. On the contrary, the weapon was lying on the mantel piece of the room in which defendant was arrested and was handed to the officers by the son of the defendant, after defendant had voluntarily told the officers that he had the gun and instructed his son to deliver it to them. Since the

weapon was voluntarily delivered to the officers, there was no unlawful search and seizure. *State v. Morris,* 243 S. C. 225, 133 S. E. (2d) 744.

Assuming however that the weapon was obtained as a result of a search, the arrest of the defendant without a warrant under the facts of this case was not an illegal arrest, and the seizure of the weapon incident to such arrest was lawful

Section 17-251, *supra,* provides that *any person* may ██ arrest without a warrant upon *"certain information* that a felony has been committed." The "certain information" referred to in the statute means the existence of reasonable grounds to suspect the party arrested may be guilty of a felony. As stated in *State v. Griffin,* 74 S. C. 412, 54 S. E. 603: "The word 'certain' is used in the sense of trustworthy, capable of being depended upon, credible, positive, or reliable, and has reference to the evidence or information upon which the person making the arrest is allowed to act, and not to the actual fact that a felony has been committed. When the information was certain, in the sense hereinbefore mentioned, any person has as much right to make the arrest as if acting by virtue of a warrant issued by a regularly authorized officer of the law. * * *."

While there appears to be no substantial difference ██ between the right of an officer to arrest for a felony under the statute and under the common law, it was pointed out in *Bushardt v. United Investment Co.,* 121 S. C. 324, 113 S. E. 637, 35 A. L. R. 637, that such right of an officer existed at common law, and was unaffected by the statute. The rule with regard to the right of an officer to arrest in felony cases without a warrant in thus stated in 6 C. J. S. Arrest § 6 d, page 596, and approved in *Bushardt*: "Where an officer, in good faith, believes that a person is guilty of a felony, and his belief rests on such ground as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise, he has such probable

cause for his belief as will justify him in arresting without a warrant."

The defendant argues however that the defendant ▮ was arrested by the officers in this case before the victim died and, therefore, the defendant at the time of arrest had committed only an assault and battery which, admittedly, is a misdemeanor. The fact that the victim of the assault had not died at the time of the arrest is not conclusive, under the present facts, of the right of the officers to arrest without a warrant.

Applicable, we think, is the sound general principle ▮ that where a dangerous wound is inflicted, a peace officer need not wait to ascertain whether the injured person dies, and may arrest the offender without a warrant, if he in good faith believes that the wound is such that a felony will likely result from it through the injured person's death, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise. See: *Commonwealth v. Phelps,* 209 Mass. 396, 95 N. E. 868.

The officers were called to the scene shortly after the shooting. They observed that the deceased had been shot and required hospitalization. From their observations and inquiries at the scene of the shooting, they had reasonable grounds to believe that the wounds had been inflicted by the defendant, that such wounds were of a serious nature, and might result in death. These circumstances were such as to justify a belief on the part of the officers that a felony would result from the wounds inflicted by the defendant, so as to authorize the arrest of the defendant without a warrant.

Under the facts of this case, since the weapon in ▮ question was taken in connection with a lawful arrest, it was not obtained as a result of an unlawful search.

"When a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous

search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. The right to search and seize incident to a lawful arrest and without a warrant extends to things under the accused's immediate control and, to an extent depending on the circumstance of the case, to the place where he is arrested." 47 Am. Jur., Searches and Seizures, Section 19 (Cummulative Supplement). See also: 47 Am. Jur., Searches and Seizures, Section 54; Annotations: 32 A. L. R. 680, 51 A. L. R. 424, 74 A. L. R. 1387, 82 A. L. R. 782; 79 C. J. S. Searches and Seizures § 67.

The weapon in this case was obtained without a search warrant, but incident to a lawful arrest, from the home of defendant and the room therein in which he was arrested. It was the instrument used in the commission of the crime for which the arrest was being made. Under such circumstances, even if it was obtained as a result of a search, the search was not unlawful so as to preclude the admissibility of the weapon in evidence or testimony thereabout.

In addition to our consideration of the questions raised by the foregoing exceptions, we have, in accord with our rule in death cases, searched the record to determine if prejudicial error was committed in the trial of the defendant. We find none. The record contains ample testimony to warrant the verdict of the jury and the judgment is affirmed.

Moss, C. J., and Bussey and Brailsford, JJ., concur.

G. Badger Baker, Acting J., disqualified.